**Lucille LOWREY and Deming A. Lowrey, Trustees of the George S. Lowrey Testamentary Trust A, Applicants, and Oklahoma Water Resources Board, Appellants,**

**v.**

**John C. HODGES and Jerry Hodges, Protestants, Appellees.**

**No. 48909.**

Supreme Court of Oklahoma.

Oct. 7, 1976.

As Amended on Denial of Rehearing Nov. 8, 1976.

Wright, Lowrey & Williams by Tom Z. Wright, Woodward, for appellants, Lucille Lowrey and Deming A. Lowrey, Trustees of the George S. Lowrey Testamentary Trust A.

Larry Derryberry, Atty. Gen., James R. Barnett, Asst. Atty. Gen., Oklahoma City, for appellant, Water Resources Bd.

Conner, Little & Conner by Leslie L. Conner, Stephen H. Crosby, Oklahoma City, for appellees, John C. Hodges and Jerry Hodges.

BARNES, Justice.

This case involves the application of the Oklahoma Ground Water Law, 82 O.S.1975 Supp. §§ 1020.1 et seq. The pertinent facts are as hereinafter related. On June 10, 1974, Appellants, Lucille Lowrey and Deming A. Lowrey, mother and son, Trustees of the George S. Lowrey Testamentary Trust A, filed Application No. 74–244 with the Oklahoma Water Resources Board seeking a permit to take and use from the Ogallala Aquifer 320 acre-feet of ground water for irrigation purposes. The water was to be utilized on 160 acres of cropland located in Beaver County, Oklahoma, and owned by said Trustees, which land is presently leased to Verl Oyler under a share-crop lease. The Application stated that two wells would be drilled for flood irrigation under a system to be designed by the Soil Conservation Service, located the wells, stated the crops (milo, alfalfa, wheat, and corn) to be grown, showed the location of nearby wells, and attached a list of adjacent landowners.

The Appellants' Application was set for hearing and proper notice was published in the newspaper and mailed to adjacent landowners. The Application was protested by Appellees, John C. Hodges and Jerry

Hodges, owners of adjacent land, who filed a written Answer and Protest to the ground water application. Appellants filed a Response to the Appellees' Protest, which recognized that the hydrologic survey and investigation of the fresh ground water basin or subbasin underlying Appellants' land had not been completed pursuant to 82 O.S.1975 Supp. § 1020.4 and 1020.5 and, therefore, the Board could not grant a regular permit, but asserted that a temporary permit could be granted under 82 O.S.1975 Supp. § 1020.10.

Oklahoma law provides any landowner has a right to take ground water from land owned by him for domestic use without a permit, 82 O.S.1975 Supp. § 1020.3. However, for other than domestic purposes, a permit must be obtained as provided in 82 O.S.1975 Supp. § 1020.9:

"At [a] hearing, the Board shall determine from the evidence presented by the parties interested, from the hydrologic surveys and from other relevant data available to the Board and applicant, whether the lands owned or leased by the applicant overlie the fresh ground water basin or subbasin and whether the use to which the applicant intends to put the water is a beneficial use. If so, and if the Board finds that waste will not occur, the Board shall approve the application by issuing a regular permit. * * * *"

82 O.S.1975 Supp. § 1020.10 deals with temporary permits and provides:

"The procedures provided herein for the granting of regular permits shall be applicable to the granting of temporary or special permits except that the completion of the hydrologic survey shall not be a condition precedent."

82 O.S.1975 Supp. § 1020.11 defines types of permits as follows:

"A. Regular Permit. A regular permit is an authorization to put ground water to beneficial use for other than domestic purposes. The regular permit shall be granted only after completion of the hydrologic survey and determination

of the maximum annual yield for the appropriate basin or subbasin. * * *

"B. Temporary Permit. A temporary permit is an authorization for the same purposes as a regular permit but granted by the Board prior to completion of the hydrologic survey and the determination of the maximum annual yield of the basin or subbasin. Unless requested by a majority of the owners of the land, the water allocated by a temporary permit shall not be less than two (2) acre-feet annually for each acre of land owned or leased by the applicant in the basin or subbasin; provided, however, if the applicant presents clear and convincing evidence that allocations in excess of two (2) acre-feet annually for each acre of land overlying the basin or subbasin will not exhaust the water thereunder in less than twenty (20) years, then the Board may issue temporary permits in such basin or subbasin in such amounts in excess of said limitation as will assure a minimum twenty-year life for such basin or subbasin. *A temporary permit must be revalidated annually during its term. The permit shall lapse at expiration of its term or upon the issuance of a regular permit, whichever shall occur first.* It is subject to revocation or cancellation as provided in Sections 1020.12 and 1020.15 of this title." (Emphasis ours)

Thus, the Water Resources Board may issue a regular permanent permit only after a hydrologic study is completed in a particular ground water basin. Studies of the most critical water areas are being made at the present time, but hydrologic surveys for the Ogallala Aquifer are not currently in existence, and until this is accomplished the Board can only issue temporary permits. Thus, while there is no place on the Application itself to request a temporary, as opposed to the regular, permit, apparently all such requests of the Board for regular permits are treated as requests for temporary permits.

On September 13, 1974, the case was argued before a planning engineer of the Ground Water Division of the Water Resources Board, who acted as hearing examiner. Appellees demurred to the evidence and moved to dismiss the Application, which demurrer and motion were overruled. Subsequent to the September 13, 1974, hearing, appearances were entered and written protests filed by the Towns of Forgan and Beaver, Oklahoma. However, neither protest, nor that of twenty-one other landowners in the vicinity, was in writing and filed five days prior to the hearing, as required by law.

A hearing before the full Board was granted and held on October 8, 1974, at which time the Application was approved and a temporary permit granted Appellants. Thereafter, on November 11, 1974, after additional oral argument, the Board denied Appellees' motions for rehearing and reconsideration of the case.

The Board filed a formal Order and a formal Amended Findings of Fact and Conclusions of Law. The Findings of Fact contained the following sections pertinent to this review:

"C. Said application was protested by John C. Hodges and Jerry R. Hodges, Forgan, Oklahoma, on the basis that: the granting of a permit would endanger the water level; that the water would be drained from under the protestants' properties; that the proper hydrologic and maximum yield data has not been determined and, therefore, any taking would be premature; that the application contains discrepancies as to the amount of water to be withdrawn; that the application filed does not state facts or acts sufficient to constitute the basis to permit them to drill said wells; that the withdrawal of water from the Ogallala Aquifer at this location would create waste as defined by 82 O.S. § 1020.15; that said application does not conform to Title 82 O.S. §§ 1020.1 to 1020.-22 of the Statutes of the State of

Oklahoma in that it is insufficient in the application; that at this particular location, the Ogallala Aquifer does not replenish itself, even under the present domestic uses in the area; that the proposed well locations are too close to the property line and a minimum withdrawal of water would deplete the storage under the grounds; and, that the allowance of said permit and the drilling of said wells would be in violation of the Constitution of the United States and the Constitution of the State of Oklahoma and of due process of law.

\* \* \* \* \* \*

"E. From Protestant's Exhibits 2H, 3H and 4H, *Hydrologic Investigations Atlas HA–450*, sheet 3, 1 and 2, respectively, by R. B. Morton and R. L. Goemaat and published by the United States Geological Survey, it was determined by a Ground Water Division Staff Geologist that: the Lowrey farm, which is located in the E ½ of the NW ¼ of Section 18, Township 5N, Range 24ECM and the W ½ of the NE ¼ of Section 18, Township 5N, Range 24ECM, Beaver County, Oklahoma, overlies the Ogallala ground water basin; the Ogallala is at least 100 feet thick and could be as much as 250 feet thick; that the saturated thickness of the Ogallala is at least 75 feet thick and could range to 200 feet thick; the depth to water is 25 to 50 feet; and all the Lowrey farm lies in an area with sufficient thickness of saturated materials and topography most favorable for irrigation.

"F. A Ground Water. Division Staff Geologist determined from the plat submitted with the application that: the Lowrey well in the NW ¼ of the NE ¼ of the NW ¼ of Section 18, Township 5N, Range 24ECM, Beaver County, Oklahoma, is 2,112 feet from the J. R. Hodges domestic well in the SW ¼ of the NW ¼ and is approximately 4,643 feet from the nearest Town of Forgan well; the Lowrey well in the SW ¼ of the NE ¼ of Section 18, Township 5N, Range 24ECM, Beaver County, Oklahoma, is 1,419 feet from the J. C. Hodges well in the NE ¼ of Section 18, Township 5N, Range 24ECM, Beaver County, Oklahoma; because of these distances, any drawdown of these surrounding wells due to pumping the Lowrey wells would not be anticipated.

"G. According to well record cards and applications, both on file in the Oklahoma Water Resources Board's office, there is irrigation development in this township in addition to the Lowrey farm. H. L. Looney irrigates 80 acres in Section 30, Township 5N, Range 24ECM, Beaver County, Oklahoma, from a well drilled to 87 feet and which has 83 feet of saturated thickness with a depth to water of 14 feet. The pump has a rated capacity of 600 gallons per minute. The area, according to the *Hydrologic Investigations Atlas HA–450,* is less favorable for irrigation than the Lowrey farm. Mr. Looney has used water for irrigation from 1948 through 1955 and from 1962 through 1973 with an estimated total use of 1,631 acre-feet. Larry Hodges, Route # 1, Forgan, Oklahoma, irrigates a tract in the NW ¼ of Section 5, Township 5N, Range 24ECM, Beaver County, Oklahoma. The Town of Beaver also has a municipal well in Section 30, Township 5N, Range 24ECM, Beaver County, Oklahoma.

"H. The application along with all relevant information, was presented to the Board for consideration at its regular monthly meeting on Octo-

ber 8, 1974, at which time the Board determined, from all the facts and evidence presented, that: the application was filed in accordance with the law; that the application was properly filled out; that irrigation for the benefit of growing food and fiber is a beneficial use, according to an Attorney General's opinion issued on March 13, 1967; that the legal descriptions as given are sufficient, according to the Assistant Attorney General; that the applicants own the land; that all wells within one-half mile of the proposed well locations were properly drawn on the plat and that the plat was properly drawn from aerial photographs; that since there is no well spacing, there is no control on the placing of irrigations at the present time; that proper notice was published in the newspaper and was mailed to the adjacent land owners; that proper public hearing was held; that a licensed water well driller will be used to drill the wells; that the land will be irrigated in accordance with the recommendations of the United States Department of Agriculture Soil Conservation Service; that the water will be transported to the point of use by underground pipe and dispensed by grated pipe; that there is no evidence at this time that waste will occur; and that a temporary permit should be granted in the amount of 320 acre-feet of water annually."

The Conclusions of Law were set forth as follows:

"A.  The applicant has complied with the provisions of 82 O.S.Supp. 1974, § 1020.7, in filing application No. 74–244.

"B.  Proper notice was published and a hearing held pursuant to 82 O.S. Supp.1974, § 1020.8.

"C.  In that hydrologic surveys and the determination of the maximum annual yield of the basin or subbasin have not been made pursuant to 82 O.S.Supp.1974, §§ 1020.4 and 1020.5, a temporary permit shall be granted under the provisions of 82 O.S.Supp.1974, §§ 1020.10 and 1020.11(B). Such temporary permits must be revalidated annually during its term in accordance with 82 O.S.Supp.1974, § 1020.11(B)."

Subsequent to the Board's granting Appellants' Application for a temporary permit, the Appellees filed a Petition for Review with the District Court of Oklahoma County pursuant to the Administrative Procedures Act, 75 O.S.1971 §§ 301 et seq. The Trial Court reversed the Board's order granting the Appellants a temporary permit and dismissed their Application, without prejudice to their filing another application for such a temporary permit.

The Judgment of the Trial Court stated that Appellants proved, as required by 82 O.S.1975 Supp. § 1020.9, that (1) they were owners of the land; (2) the land overlies a fresh water basin; and (3) attempted to prove the third requirement that the water will be put to a beneficial use, to-wit: irrigation. The Trial Court said there was no evidence with respect to the fourth requirement that there will be no waste and that such finding is insufficient in the absence of evidence.

The Judgment of the Trial Court further states:

"  *   *   *  The appellants attempted to go into the suitability of the land for irrigation, and to offer evidence of the land's unsuitability, but such evidence was excluded by the hearing examiner. This was error. The hearing examiner erroneously held that the suitability of the land for irrigation purposes was immaterial. The very basis for the application was to use the water for irrigation purposes. If the water cannot be used for irrigation the reason for the application is obviated.

"The Board apparently took judicial notice of certain data in its office (finding 'G' on page 152 of the transcript) with respect to irrigation of land in the same township, which it equated with the land in question. This is proper under 75 O.S. 310, but such data must be made a part of the record of the proceedings before the Board may consider it. Such data is not shown in the transcript and therefore such evidence may not be considered. Therefore the Court is of the opinion that the evidence failed to prove that the water would be used for beneficial purposes.

\* \* \* \* \* \*

" \* \* \* In the absence of a Hydro Logic Survey a temporary permit is authorized. The Board found that an application for a regular permit includes application for a temporary permit. There is logic in that position. However, the legislature clearly intended to limit water use to a temporary basis in the absence of a Hydro Logic Survey in order to prevent depletion of the water supply, and the legislature surely intended to make a distinction between a permanent and a temporary use of water. In this case the application provides that the appellees propose to install an irrigation system on the land, and the first form of application states that the system will be developed over a period of five years. The evidence shows that the cost of the irrigation system will be substantial. It therefore appears that the granting of a temporary permit is tantamount to the granting of a regular (permanent) permit, thus permitting the appellees to circumvent the intent of the legislature by placing the water to a permanent use instead of a temporary use.

"The Court is therefore of the opinion that the action by the Board in granting appellees a temporary permit for the use of water other than for domestic purposes, is not supported by the evidence, is contrary to law, and that the order of the Board granting temporary permit

should be vacated, without prejudice to the right of the appellees to file application for a temporary permit. \* \* \* "

On appeal Appellants urge as error that the Trial Court erred in ruling (1) that the evidence before the Oklahoma Water Resources Board was insufficient to support the findings of the Board; (2) that the temporary permit issued was at variance with the application; (3) that there were errors in procedure on the part of the hearing examiner and on the part of the Board; and (4) that irrigation of farm lands for the production of food and fiber is not a beneficial use of water under the Oklahoma Ground Water Law, 82 O.S.1975 Supp. §§ 1020.1 et seq.

■ The Trial Court found that the evidence before the Board and the matters officially noticed in the record were insufficient to grant the ground water permit in this case, particularly on the issues of beneficial use and non-waste, and that whether irrigation of farmlands contributes to agricultural stability must be proved by evidence or facts officially noticed in each particular case; that irrigation is not per se a beneficial use under 82 O.S.1975 Supp. § 1020.9. We think this issue has been settled by legislative act. In 82 O.S.1975 Supp. § 1020.2 the Legislature stated that:

"It is hereby declared to be the public policy of this state, in the interest of the *agricultural stability*, domestic, municipal, industrial *and other beneficial uses*, general economy, health and welfare of the state and its citizens, to utilize the ground water resources of the state . . . ." (Emphasis ours)

It is noted that the Legislature designated agricultural stability as a beneficial use. It requires little imagination to recognize that the Legislature intended to include irrigation for the purpose of growing food and fiber as a beneficial agricultural use. Further, the Board has recognized in its Rules and Regulations, Rule 600.1(g), that:

". . . Beneficial uses include but are not limited to minicipal, industrial,

*irrigation,* recreation, fish and wildlife, etc." (Emphasis ours)

The Trial Court stated Appellants attempted to prove beneficial use, to-wit: irrigation, but that Finding "G" of the Amended Findings of Fact, supra, was not a part of the transcript and could not be considered and thus the evidence failed to prove the water would be put to a beneficial use. While we agree that the "well record cards and applications" and "Hydrologic Atlas HA–450" referred to in Finding "G" were not placed in evidence, we are of the opinion that such findings were no surprise to Appellees. This is reflected by the record itself (R.P. 130), which refers to nearby irrigation wells of Larry Hodges and H. L. Looney. We further note the Appellees did not contest the same.

The Appellants' witness, Verl Oyler, testified how the land would be irrigated. He stated the plan was to flood irrigate the land; that the static water level in all the test holes twenty-four hours after drilling was between 20 to 22 feet; that the water would be pumped under ground from west to east and there released through gated pipe on the surface to trickle down the natural slope of the land to the west; and that the applicants intended to follow the recommendations of the Soil Conservation Service regarding layout of the irrigation system, the underground pipeline, length of the rows down which the water will run and the manner of farming.

The Board found in Finding "H" of its Findings of Fact that:

". . . that there is no evidence at this time that waste will occur; and that a temporary permit should be granted. . . ." (R. 152)

In addition, Appellees introduced (R. 52) Exhibits 2–H, 3–H, and 4–H, three large maps of Beaver County prepared by the United States Geological Survey, showing Appellants' land is located in an area of Beaver County considered favorable for irrigation and proving the existence of nearby irrigation and municipal wells mentioned in Finding "G". Further, Appellees' own expert witness Edinger testified there were four irrigation wells in the area (R. 55). We cannot see where the Board's decision could be better supported by the evidence than when it is based on evidence introduced by the Appellees themselves. We think that the Board's finding is supported by the evidence.

■ Regarding the question of waste, the Appellees contend the evidence in each particular case, including facts officially noticed in the record, must show that waste will not occur as provided in 82 O. S.1975 Supp. § 1020.9. We would agree that an applicant must show what method he intends to use for irrigating a particular area; but once that information has been furnished the Board, it then has the authority to determine that waste will not occur. If the Protestants think that waste will occur, they would need to present that evidence to the Board for its consideration. Here, the Appellants introduced their plan to the Board and the plan was approved by the Board as not being wasteful.

■ If the plans submitted to the Board do not on their face demonstrate such waste, and the Protestants fail to introduce evidence to substantiate that waste will occur, and the Board finds that waste will not occur, the statute has been satisfied and further questions concerning waste must await completion of the project.

■ We further find that the definitions of waste set forth in 82 O.S.1975 Supp. § 1020.15 contemplate an after-the-fact finding of waste and set out the procedure for criminal prosecution, injunction, and suspension of a permit when and if it occurs.

■ Appellees also contend that the hearing examiner in the proceedings before the Board was not impartial in violation of their constitutional rights and that due process includes an impartial trial before an impartial and unbiased hearing examiner, citing such cases as *Corporation Commission v. Oklahoma State Personnel*

*Board,* 513 P.2d 116 (Okl.1973), and *National Labor Relations Board v. National Paper Company,* 216 F.2d 859 (5th Cir. 1954).

Appellees submit the hearing examiner was not neutral in regard to Appellants' application, for prior to the taking of any evidence the hearing examiner indicated he would recommend the issuance of the ground water permit when he stated:

". . . so the way I see it and the way the staff will recommend, after we have studied all the data and everything, this will probably go before the board the second Tuesday in October, and after we have studied a little bit better, but the way I see it, we will probably recommend that this applicant be issued two (2) acre feet of water per acre of land that he owns that overlies this fresh ground water basin. . . ."

With this contention we cannot agree. The record reflects the following language of the hearing examiner at page 33:

"Q. Now is that a comment by you before you hear the evidence in the case?

"A. No, sir, I just say it probably will be. Now I'm not saying that it's definite. I haven't studied all the facts yet, *and certainly I would study all of them before we make any recommendations* then we will have a conference with the Director and the other people at the Water Resources Board before we do any recommending." (Emphasis ours).

Appellees further submit that the hearing examiner took an active part in questioning the witnesses. We think, however, that a fair reading of the entire transcript reveals no errors rendered which could be deemed prejudicial to the Appellants. Furthermore, the Appellees never sought to disqualify the hearing examiner under 75 O.S.1971 § 316 for inability to give a fair and impartial hearing. The Board approached this matter in great detail and the final findings and decision were left to the Board itself after arguments of counsel. We think the controlling law is well stated in 2 Am.Jur.2d, Administrative Law, § 413:

". . . due process is not necessarily denied by the fact that the hearing is before the same authority which has preferred the charges upon which the hearing is had, or by the fact that the trier of the fact has personal knowledge of the matter in issue or has expressed an opinion that the conduct in question is illegal. The combination in the same person of the functions of investigation or advocacy and the function of deciding is a recognized evil which, to some extent, the specific provisions of the Federal Administrative Procedure Act ameliorate, and even where such a statute does not apply, such a combination of functions has been held not to support a claim of denial of due process of law."

■ Appellants next contend that the Trial Court erred in ruling that the temporary permit issued was at variance with the application. We note that no hydrologic studies required by 82 O.S.1975 Supp. § 1020.9 for issuance of a regular permit are currently in existence. Therefore, only temporary permits may be issued at this time. The Trial Court found a temporary permit is tantamount to a regular permit and its issuance circumvented the intention of the Legislature. We do not agree. A temporary permit is not tantamount to a regular permit in that the statute provides it must be revalidated annually. See 82 O.S.1975 Supp. § 1020.11(B). It is thus subject to review on a yearly basis and possible nonrenewal.

■ The Trial Court erred in concluding that an application for a regular permit does not include within its subject matter an application for a temporary permit. 82 O.S.1975 Supp. § 1020.10 practically states as much:

"The procedures provided herein for the granting of regular permits shall be

applicable to the granting of temporary or special permits except that the completion of the hydrologic survey shall not be a condition precedent."

We think this justifies the Board's determination that an application for a regular permit is sufficient to warrant the issuance of a temporary permit until such time as the hydrologic surveys are completed.

Appellants next contend that the Trial Court erred in ruling that there were errors in procedure on the part of the hearing examiner and the Board, particularly as to excluding evidence as to the land's suitability for irrigation. The Trial Court said the Appellants attempted to go into the suitability of the land for irrigation and to offer evidence of the land's suitability, but such evidence was excluded by the hearing examiner and found such was error. Appellees assert that evidence of what the soil would raise relates to "agricultural stability". We find that the amount of grain produced on the land in prior years or the profit made thereon clearly has no relevance to the issuance of the permit and, therefore, that the Board correctly excluded said evidence. Moreover, questions asked of any witness regarding the suitability of the soil for irrigation were never excluded by the hearing examiner.

Appellees further argue that the Board did not take proper account of domestic priorities to use ground water. The statute in question does not require the Board to consider domestic priorities before granting a temporary permit.

We conclude the Appellants proved by uncontroverted evidence that their lands overlie the fresh ground water basin, that they intend to put the water to a beneficial use, and that no evidence was offered to show that waste would or was likely to occur if Appellants' permit was granted.

After carefully considering the record and briefs, we are of the opinion the judgment of the District Court should be vacated and the Findings and Order of the Water Resources Board reinstated granting a temporary permit to the Appellants.

WILLIAMS, C. J., HODGES, V. C. J., and DAVISON, IRWIN, LAVENDER and DOOLIN, JJ., concur.