John C. HODGES, Jerry R. Hodges, Francis Mills, T. A. Judy, George Angleton, Steil Nash, Ethel V. Noble, Raymond Hodges, Jock Elston, and Gaylen B. Miller, Appellees,

v.

OKLAHOMA WATER RESOURCES BOARD and B. R. Smylie, Appellants.

No. 49403.

Supreme Court of Oklahoma.

June 27, 1978.

10. See generally Saperstein "Expungement for Youth Offenders" 83 Case & Com 3 (1978).

Leslie L. Conner and Leslie L. Conner, Jr., Conner, Little & Conner, Oklahoma City, for appellees.

Larry Derryberry, Atty. Gen., James R. Barnett, Asst. Atty. Gen., Oklahoma City, for appellant, Water Resources Board.

Jerry L. Venable, Pauls Valley, for appellant, B. R. Smylie.

BARNES, Justice:

This appeal involves an order of the Oklahoma Water Resources Board which granted B. R. Smylie a temporary permit to take and use ground water for other than a domestic use. Several local residents and the Town of Forgan protested the granting of the permit, claiming that if Mr. Smylie was permitted to use the ground water requested, his use would decrease the quality of water available for domestic use in the area and subsequently deplete the water available for domestic and municipal use.

Several of the protestants appealed the granting of the permit to the District Court of Oklahoma County. The District Court reversed the order of the Board granting the permit and dismissed Mr. Smylie's application without prejudice to the filing of another application.

Title 82 O.S.Supp.1972, § 1020.9, which establishes the criteria for the granting of a permit to take and use ground water for other than domestic purposes, provides in part:

> "At the hearing, the Board shall determine from the evidence presented by the parties interested, from the hydrologic surveys and from other relevant data available to the Board and applicant, whether the *lands owned or leased by the applicant overlie the fresh ground water basin or subbasin* and whether the use to which the applicant intends to put the water is a *beneficial use.* If so, and if the Board finds that *waste will not occur,* the Board shall approve the application * * *." (Emphasis added).

Among other grounds, the Trial Court's decision to reverse the Board was based upon the Board's findings of fact and conclusions, which the court held were clearly erroneous for:

1. The Board's finding that Mr. Smylie's use of the water would be a *beneficial use* was not supported by substantial competent evidence.

2. The Board's finding that Mr. Smylie's use of the water would not result in

*waste,* was not supported by substantial competent evidence.

3. The Board failed to address the issue raised by the protestant's argument that domestic use of ground water has a priority, and that Mr. Smylie's use of ground water would have a detrimental effect on domestic use.

At hearings conducted by the Board, the applicant, Mr. Smylie, indicated that he would use the water for spray irrigation and that he would comply with any suggestions made by the Soil Conservation Service and the Agricultural Stability and Conservation Service. This was the only evidence introduced with regard to the method of irrigation to be used by the applicant.

Title 82 O.S.Supp.1972, § 1020.2, provides:

"It is hereby declared to be the public policy of this state, in the interest of the agricultural stability, domestic, municipal, industrial and other beneficial uses, general economy, health and welfare of the state and its citizens, to utilize the ground water resources of the state . . . ."

■ Applicant Smylie and the Board argue that the inclusion of "agricultural stability" in the above section is an indication that irrigation for agricultural purposes is per se beneficial.

Mr. Smylie and the Board also call our attention to Rule No. 600.1 of the Oklahoma Water Board, which in subdivision (g) defines "beneficial use" as:

" * * * the use of quantity of ground water when *reasonable intelligence* and *reasonable diligence* are exercised in its application for a lawful purpose, as is economically necessary for that purpose. Beneficial uses include but are not limited to municipal, industrial, irrigation, recreation, fish and wildlife, etc." (Emphasis added).

In the recent case of *Lowery v. Hodges,* 555 P.2d 1016 (Okl.1976), we considered an almost identical case to this one. There, as here, the Trial Court found:

"The Court is therefore of the opinion that the action by the Board in granting Appellees a temporary permit for the use of water other than for domestic purposes, is not supported by the evidence, is contrary to law, and that the order of the Board granting temporary permit should be vacated without prejudice to the right of the Appellees to file application for a temporary permit."

In addition to the above, the Trial Court here found:

"The Board failed to address the issues raised by the protestant's argument that domestic use of ground water has a priority and that Mr. Smylie's use of ground water would have a detrimental effect on domestic use."

■ The reasoning in *Lowery, supra,* answers Appellees' questions concerning whether or not irrigation is a beneficial use and what proof it is necessary for an applicant to present that there will not be waste:

"We would agree that an applicant must show what method he intends to use for irrigating a particular area; but once that information has been furnished the Board, it then has the authority to determine that waste will not occur. If the Protestants think that waste will occur, they would need to present that evidence to the Board for its consideration."

The only evidence presented to the Board in the case before us that would suggest waste was evidence that the total mineral content, measured in parts per million, of domestic wells in the area, might be increased when the irrigation water filtered back into the ground water formation.[1] This evidence relating to total mineral content, which is one indication of water quality, was not conclusive.

Because of the inconclusive nature of the evidence and because Mr. Smylie did testify that he would acquiesce to and follow any

---

1. According to expert testimony presented by the protestants, the total mineral content is the measurement of all various chemical substances in water. The testimony indicated that the U.S. Department of Health recommends that, if possible, water for human consumption should not exceed 500 parts per million total mineral content. Total mineral content is thus one indication of the quality of water; the higher the content, the lower the quality.

recommendations made by the Soil Conservation Service and Agricultural Stability Conservation Service, we hold that the Board did not err in finding that waste would not occur if the permit was granted.

We find that the Trial Court should have sustained the Board's finding on each of those questions. We further held in *Lowery, supra,* that the statutes (82 O.S. Supp.1972, §§ 1020.1, et seq.) do not require the Board to consider domestic priorities before granting a permit. We now hold that the fact that it is not necessary to obtain a permit before taking water for domestic use does not give water for domestic use a priority over water put to other beneficial use. If the Legislature had intended such a priority to be given water for domestic use, it would have so stated in the sections of the statute relating to permits. We have no alternative but to hold that no such priority was intended.

The judgment of the Trial Court is reversed and the findings of the Water Resources Board granting a temporary permit to Appellants is reinstated.

LAVENDER, V. C. J., and WILLIAMS, IRWIN, BERRY and DOOLIN, JJ., concur.

HODGES, C. J., and DAVISON, J., dissent.