Jack Benton WILSON, Sr., Appellee,

v.

**OKLAHOMA HORSE RACING COMMISSION and Board of Stewards of Blue Ribbon Downs, Appellant.**

No. 75822.

Supreme Court of Oklahoma.

Jan. 16, 1996.

Jeff Mixon, Assistant Attorney General, Oklahoma City, for Appellants.

Monte W. Strout, Tahlequah, for Appellee.

HARGRAVE, Justice.

Two issues are before us: 1) whether there was substantial evidence to support the Oklahoma Horse Racing Commission's order fining and suspending trainer Jack Wilson, Sr., and 2) whether Wilson received a fair and impartial hearing. In light of our finding that the trainer did not receive a fair and impartial hearing where one of the adjudicators also testified in the case, we need not answer the first question.

Jack Benton Wilson, Sr. was the trainer of Dazzle Dixie, a horse entered in the Oklahoma Derby at Blue Ribbon Downs on May 1, 1988. On April 29, 1988, Wilson's veterinarian dispensed certain medication to Dazzle Dixie, including the drug Banamine. As required, Wilson's veterinarian turned in his medication reports to the track veterinarian on the day of the race. The track veterinarian misread the report and mistakenly believed that Dazzle Dixie had been treated on April 30 rather than on April 29. This erroneous belief caused the track veterinarian to notify the official veterinarian that the Stewards should be notified that a problem was indicated by the reports on Dazzle Dixie. The official veterinarian notified Steward Charlie Cox, who dispatched security guards to Wilson's barn and Dazzle Dixie was taken to the test barn for a blood test. In the meantime, the track veterinarian had realized the mistake and contacted Steward Charlie Cox. In spite of this information, Steward Cox ordered the testing to continue.

At racetime, Dazzle Dixie was saddled and led with the other horses to the starting gate. Dazzle Dixie became unruly and "flipped" in the starting gate. The Board of Stewards and the official veterinarian ordered Dazzle Dixie scratched from the race. Dazzle Dixie was taken to the test barn for a urine sample that was sent the next day to the usual laboratory in Denver, Colorado. The Denver lab was notified that the Dazzle Dixie sample might contain Banamine.

On May 5, 1988, the laboratory sent a mailgram reporting the presence of "Flunixin," which is the primary ingredient of the drug known as Banamine, in the sample. On the same day, Trainer Wilson was notified by the Board of Stewards that he was summarily suspended because of an alleged medical violation involving Dazzle Dixie. On May 8, 1988, Wilson requested that a separate test

("split sample") be conducted by an independent laboratory. The second laboratory was informed by the first laboratory that the sample might contain Banamine. Confirmation of the presence of Flunixin was made to the Commission by Truesdail Labs, Inc., on May 13, 1988.

Trainer Jack Wilson states that prior to any hearing on the matter he moved to disqualify the Board of Stewards. One steward disqualified because of a pending lawsuit between herself and Wilson. Steward Charlie Cox, who had participated in the investigation against Wilson, did not disqualify. A hearing on the allegations was set before a three-person Board of Stewards, presided over by Steward Charlie Cox. Testimony was taken at a hearing held on May 26, 1988. That hearing was postponed pending the outcome of discovery, and was reconvened on October 10, 1988 at the Oklahoma Horse Racing Commission (OHRC) office in Oklahoma City. At that hearing Trainer Jack Wilson called Steward Charlie Cox as a witness. Steward Cox was sworn, testified both on direct and cross-examination, then resumed presiding over the hearing.

The three-person Board of Stewards fined Wilson the sum of $500.00 and suspended his license for thirty days. Wilson appealed to the Oklahoma Horse Racing Commission and the Commission voted 5 – 2 to sustain the ruling. Wilson then appealed to the district court of Sequoyah County, under the Administrative Procedures Act, 75 O.S.1991 § 318 and Trial Judge Bill Ed Rogers vacated the Commission's order. A temporary lawyer-staffed panel of the Court of Appeals, in an unpublished opinion, affirmed the district court.

Trainer Wilson argues that the hearing was unfair to him because of Steward Charlie Cox's participation as presiding steward in the matter, after having been involved in the gathering of the evidence and testifying as a witness in the proceeding. The district court, on appeal from the OHRC decision, agreed.

The Commission argues that the fact that a member of an administrative body is involved in both the investigatory and adjudicatory stages does not deprive the party of due process, citing *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). *See also, Lowrey v. Hodges,* 555 P.2d 1016, 1024 (Okla.1976), which stated:

"... due process is not necessarily denied by the fact that the hearing is before the same authority which has preferred the charges upon which the hearing is had, or by the fact that the trier of the fact has personal knowledge of the matter in issue or as expressed an opinion that the conduct in question is illegal. The combination in the same person of the functions of investigation or advocacy and the function of deciding is a recognized evil which, to some extent, the specific provisions of the Federal Administrative Procedure Act ameliorate and even where such a statute does not apply, such a combination of functions has been held not to support a claim of denial of due process of law."

In the *Lowrey* case, the appellees never sought to disqualify the hearing examiner under the Administrative Procedures Act. The challenge there was to a hearing examiner for the Water Resources Board who took an active part in questioning witnesses. Appellees had claimed that the hearing examiner was not neutral in the matter because of statements he made as to the probability of the Board's granting the application.

Title 75 O.S.1991 § 316 provides:

"A hearing examiner or agency member shall withdraw from any individual proceeding in which he cannot accord a fair and impartial hearing or consideration. *Any party may request the disqualification of a hearing examiner or agency member, on the ground of his inability to give a fair and impartial hearing,* by filing an affidavit, promptly upon discovery of the alleged disqualification, stating with particularity the grounds upon which it is claimed that a fair and impartial hearing cannot be accorded." (emphasis added).

After Trainer Jack Wilson orally renewed his application for disqualification at the hearing, argument was had and the stewards were polled. Each of the three stewards stated his belief that he could be fair and

impartial. Steward Charlie Cox then presided over the hearing.

At the conclusion of the testimony of the independent witnesses, Trainer Wilson called Chief Steward Charlie Cox as a witness. The record indicates that Steward Cox stepped down as hearing examiner, was sworn as a witness and testified on both direct and cross-examination. Steward Cox's testimony concerned one of the central issues in the case: Steward Cox's decision to order testing to continue even after it was discovered that the track veterinarian had made a mistake about the date the horse was treated. After testifying, Steward Cox resumed his official capacity as the chief steward conducting said hearing.

The district court found that there is no provision in law for a hearing examiner to testify as a witness in the proceedings. We have found no such authority. The district court found it irrelevant that Steward Cox was called by Wilson rather than by the OHRC; he found that the testimony not only was admissible, but was necessary to Wilson's case and to protect his right to a full and complete hearing. The district judge did not remand the matter to the Oklahoma Horse Racing Commission, but expressed his view that from the very inception, the proceedings contained such flaws as to require a vacation of the order issued on the 19th day of January by the OHRC.

■ As noted above, the fact that an agency participates in the investigation, prosecution and adjudication of matters before it has been held not to violate the due process clause. *Withrow v. Larkin,* 421 U.S. 35, 46–47, 95 S.Ct. 1456, 1463–64, 43 L.Ed.2d 712 (1975). Agency administrators are presumed to be capable of judging a particular controversy fairly, on the basis of its own circumstances. However, a person has a right to a fair and impartial hearing in any disciplinary proceeding conducted against him by such Board. *Friedman v. Rogers,* 440 U.S. 1, 18, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979). Later cases look to whether a full and fair hearing was had. *See, for example, Beer Garden, Inc. v. New York State Liquor Authority,* 79 N.Y.2d 266, 582 N.Y.S.2d 65, 590 N.E.2d 1193 (1992), where it was held that the State

Liquor Authority's Commissioner, who had been legal counsel for the Authority when the charges for license revocation were filed and heard, should have recused herself from the final agency determination, even though the Authority argued that she did not actively participate in the hearing and had no knowledge of the facts of the case. The court noted, at page 1198, that the challenge being made was not to the dual investigatory/adjudicatory role of the agency, but rather concerned an individual's participation, as advocate for the agency's position, in the very matter over which she was later required to pass impartial judgment, comparing *Withrow v. Larkin, supra.* The court stated that her role as the Authority's prosecutor was inherently incompatible with subsequent participation as its judge and that those circumstances and fundamental fairness required that she recuse herself from any reconsideration of the charge on remand.

Appellee Wilson cites 75 O.S. § 313, 75 O.S. § 316 and Opinion of the Attorney General No. 73–266 in support of his proposition that the district court did not err in holding that it was error for Steward Cox to refuse to disqualify himself from the hearing. The Attorney General's opinion, in interpreting Sections 313 and 316 of Title 75, stated that active investigation by a member of the cosmetology board would almost as a necessity lead to preconceived ideas and determinations concerning the guilt or innocence of the individual cosmetologist, and thus render that board member disqualified under section 316.

■ We find that the actions of Steward Charlie Cox in initiating and taking an active role in the matter for which Trainer Wilson was suspended, coupled with his presiding over the three-person Board and *testifying in the case* created a situation in which he should have disqualified himself. A review of the transcripts of the hearings reveals that Presiding Steward Cox, besides being called as a witness, interjected information into the proceedings during the course of testimony of other witnesses. For example, when Wilson was being questioned by his attorney about his receipt of notice about the violation, Chief Steward Cox interjected: "He received

all three. He received the notification of medication, his summary suspension and a copy of the mailgram all at the same time." (Tr. 5–26–88, p. 31). A key point in controversy was Steward Cox's ordering the horse tested after being informed by the veterinarian that a mistake had been made about the date. At page 56 of the transcript of the June 10, 1991 hearing, when questioned about the decision, and whether it fell within the OHRC Rules, Steward Cox testified:

"A. That is the way that the rule turned out, that was not the intent of it when the Commission met up here with the veterinarians, when we set in this room up here, it got misprinted and was not caught. The veterinarians came to the commission and to the Stewards to define what an entered horse was and the Rule was supposed to have read at that time, for all intent and purposes of this article and entered horse is defined as when he comes out on the overnight."

Q. But the rule doesn't say that, it didn't say that at that time, did it Charlie?

A. It did not say that at that time, but 604 very definitely states it shall not be administered prior to."

A reading of the transcript reflects that the whole tenor of Steward Cox's testimony, comprising almost twenty pages in the transcript, was to justify the decision to order testing to continue, contrary to Wilson's assertion that no violation of the Rules had occurred. Steward Cox contended that the Rule did apply, and defended his decision to order testing by relying on his interpretation of the OHRC rules.

■ A tribunal is not impartial if it is biased with respect to the factual issues to be decided at the hearing. *Miller v. Mission*, 705 F.2d 368, 372 (10th Cir.1983). In *Staton v. Mayes*, 552 F.2d 908 (10th Cir.1977), the court stated that although each board member testified that he had based his decision to dismiss the superintendent solely upon evidence presented at the hearings, there was sufficient evidence to conclude that the board was not impartial where three of the board members had made statements prior to the hearing that indicated their common belief that the plaintiff needed to be replaced. The Tenth Circuit stated:

"The firm public statements before the hearing by defendant Mayes for the removal of Dr. Staton, and the discussions by defendants Moore and Wade as admitted, *reveal a tribunal not meeting the demands of due process for a hearing with fairness and the appearance of fairness. (citations omitted)*" *Id.* at p. 913 (emphasis added).

On the record as a whole, we cannot find that the proceedings were fair and impartial. We vacate the opinion of the Temporary Lawyer–Staffed Panel of the Court of Appeals and remand the matter to the OHRC for a hearing before an impartial panel of the Board of Stewards.

**CERTIORARI HAVING BEEN GRANTED PREVIOUSLY, THE OPINION OF THE TEMPORARY LAWYER–STAFFED PANEL OF THE COURT OF APPEALS IS VACATED, THE DISTRICT COURT'S JUDGMENT IS REVERSED, AND THE MATTER IS REMANDED TO THE OHRC FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

ALMA WILSON, C.J., and LAVENDER, SIMMS, OPALA and WATT, JJ., concur.

KAUGER, V.C.J., and SUMMERS, J., concur in part; dissent in part.

HODGES, J., not participating.