In the Matter of WILLIAM F. SAUSBIER et al., Respondents, against FRED WHEELER, as Mayor of the City of Hudson, Appellant.

Argued November 15, 1937; decided November 30, 1937.

*R. Monell Herzberg, Corporation Counsel* (*R. Waldron Herzberg* of counsel) for appellant. The right of public criticism and public censure by a subordinate of a superior is not unlimited. (*People ex rel. Van Tine* v. *Purdy*, 221 N. Y. 396.)

*Samuel B. Coffin* for respondents. The Mayor was without power under the charter to countermand the orders of the Commissioners to the police department. (Laws of 1921, ch. 669, §§ 50, 52, 262, 267, 269.) The law relating to removals from office is drastic and highly

penal, and must be given a strict construction. (*State* v. *Roth*, 162 Iowa, 638.) The act charged did not constitute malconduct. (*Carlisle* v. *Burke*, 82 Misc. Rep. 282; *People ex rel. Burby* v. *Common Council*, 85 Hun, 601.)

RIPPEY, J. Under the terms of the charter of the city of Hudson (Laws of 1921, ch. 669), the Public Safety Commission consists of three members, each appointed by the Mayor for a term of three years. Any such officer is removable by the Mayor under section 30 of the charter within the term for which he shall have been appointed for incompetency or malconduct in office after he is given a copy of charges against him and an opportunity to be heard in his defense in person or by counsel. The powers of the Commission are so limited by the provisions of the charter that they may not conflict with the duties of the Mayor who, under the provisions of section 50, is the chief executive officer of the city and is charged with the duty to see that the laws of the State affecting the city or the inhabitants thereof and the ordinances, by-laws, regulations and rules of the Common Council and of the Boards and Commissions are faithfully executed.

During the early part of 1937 there were serious labor troubles between the Mohawk Novelty Company, Inc., of Hudson, and its employees, and finally a strike was called by the International Handbag, Pocketbook and Novelty Workers' Union. An arrangement was made with the knowledge of the Mayor between the Commissioners of Public Safety and the officials of the union whereby the Mohawk plant might be picketed and the numbers of the pickets were not to be limited provided peaceful picketing was carried on. Under such conditions the strike continued for a period of some two weeks when, on the afternoon of March 31, 1937, the Commission of Public Safety made and passed a resolution, without the knowledge of or previous consultation with

the Mayor, reducing the number of pickets to three at each of the two entrances to the plant, effective immediately. Under section 264 of the charter, the Commission had "power to make rules and regulations, not inconsistent with this act or with law, for the government and discipline of the police and fire departments," and it is under those provisions of the charter that it is claimed the Commission had the power, independent of the Mayor, to pass the resolution in question. But what the resolution in question had to do with the " government and discipline of the police and fire departments " we are unable to see. Perhaps the Common Council might have passed such a resolution under section 131 of the charter. Upon the question of their power we are not called upon to pass. We do not find any power in the Commission of Public Safety to pass such a resolution under the provisions of section 264 or elsewhere in the charter.

Learning of that action by the Commission and anticipating further trouble and possible riot or serious disorder if enforcement of the resolution were attempted, the Mayor called the Chief of Police on the telephone and told him to suspend the operation of the order until he, the Mayor, could give further consideration to the situation. The affidavits of police officers indicate that the fears of the Mayor were well grounded.

On the same evening the Commission made and unanimously passed a resolution censuring the Mayor for his action. In the resolution they stated that they felt it to be their duty to give the city of Hudson protection of persons and property. To get such publicity as they thought the occasion demanded, they caused the resolution to be published on the following morning in a local paper. So it is asserted in the record before us. It is clear beyond question that no authority is found in the charter to take any such action, or any action at all, against the Mayor. The Mayor promptly formulated

charges under the provisions of section 30 of the charter, served them upon the members of the Commission, gave them a hearing, at which time they were represented by counsel, and at the close of the hearing made an order removing them from office on the ground that the making and issuance of the statement at the time it was issued constituted malconduct in office in that it purported to censure him for an act which he was legally entitled to do and in the doing of which he was within his legal rights. He found that in the crisis existing in the city such action by the Commissioners tended to and did destroy their effectiveness in office and made it impossible for co-operation along the line of law enforcement between the Commissioners and himself. Thereupon the Commissioners brought this proceeding in certiorari for reinstatement on the ground that the Mayor acted beyond the scope of his authority in ordering their removal. The Appellate Division has decided that the determination of the Mayor should be annulled and that Commissioners Hudson and Connelly should be reinstated. The term of office of Commissioner Sausbier had ended prior to the time of the determination by the Appellate Division.

Under the provisions of the charter the Mayor had the power to countermand the resolution of the Commission and direct the Chief of Police to take the action indicated. It is likewise clear that the Mayor had authority and power to remove the members of the Commission under the conditions existing in this case. To give a narrow construction to the provisions of section 30 and to deny him the power of removal under the circumstances existing in this case would practically destroy or, at least, seriously impair his effectiveness as chief executive officer of the city in the performance of his duty to enforce the law. Such a condition would be intolerable. There could be no division of authority in the matter of law enforcement, nor was any such provided for or contemplated by the provisions of the charter.

It is said that the term "malconduct" does not embrace a case such as here exists and that its meaning should be limited to a case which relates to the character, neglect of duty, or fitness of the person properly to perform the duties of his position. (*People ex rel. Van Tine* v. *Purdy*, 221 N. Y. 396, 399.) We think the action of the Commissioners under the circumstances in this case did show specifically their unfitness properly to perform the duties of their office. It constituted the doing of an act which ought not to be done, was without authority and tended to hinder, hamper and render ineffective law enforcement by duly constituted authority. The word "malconduct," as used in section 30 of the charter, was never intended to be restricted exclusively to malfeasance or nonfeasance or corruption in office. It constituted gross impropriety for officers holding an appointment under the Mayor publicly to criticize and to censure him while he was still in office, and such gross impropriety under the conditions here would be included, within the meaning of the charter, in the term "malconduct."

We hold that such conduct as is shown here constitutes malconduct within the meaning of the charter of the city of Hudson, and that the Mayor was justified and acted within the specific authority conferred upon him in removing the respondents from office. Only a question of law is involved here. There is no dispute upon the material and controlling facts.

The order of the Appellate Division should be reversed and the determination of the Mayor confirmed, with costs in this court and in the Appellate Division.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur; LEHMAN, J., concurs in result.

Ordered accordingly.