Merrimack,
Nos. 5684 & 5.

## J. Herbert Quinn

*v.*

## City of Concord and Board of Aldermen.

Argued September 8, 1967.
Decided September 20, 1967.

*Wyman, Bean & Tefft* ( *Mr. Arthur E. Bean, Jr.* orally ), for the city of Concord and board of aldermen.

*Alfred Catalfo, Jr.* ( by brief and orally ), for J. Herbert Quinn.

GRIFFITH, J. J. Herbert Quinn was elected mayor of the city of Concord on January 10, 1966. On August 3, 1967 he was removed from office by the board of aldermen acting under the provisions of the city charter. On August 17, 1967 the Superior Court ( *Bownes,* J. ) set aside the action of the board of aldermen, on a petition for writ of certiorari, and reinstated J. Herbert Quinn as mayor. The present petitions to this court brought by the board of aldermen of the city of Concord request that the Supreme Court vacate the decision of the Superior Court and reinstate the decision of the board of aldermen.

The removal proceedings arose from certain actions of the mayor on June 28, 1967. On July 17, 1967 the board of aldermen appointed a subcommittee to investigate the incident of June 28. The subcommittee reported to the full board on July 20, at which time the board voted to suspend the mayor on the charge of misconduct in office pending a hearing scheduled for August 2, 1967. The Superior Court ( *Bownes,* J. ) vacated the suspension order upon petition of mayor Quinn but the hearing of August 2 on the question of removal proceeded as scheduled.

The board of aldermen had delivered to the mayor prior to the hearing by mail and in person a copy of the charges against him. Rules were established by the board of aldermen for the conduct of the hearing which was held on the evenings of August 2 and 3. The board of aldermen had the evidence relating to the charge presented by Arthur E. Bean, Jr. and the mayor was represented by Alfred Catalfo, Jr. At the conclusion of the hearing the board of aldermen, upon a motion duly made and seconded, found the mayor guilty of misconduct in office concerning the events of the evening of June 28 and removed him from office.

Mayor Quinn then brought a petition for writ of certiorari to the Merrimack County Superior Court and a hearing was held on this petition on August 15. The Court limited the hearing to two questions:

"1. Was Mayor Quinn given a fair hearing before the removal action was taken?

"2. Did the facts on which the charge of misconduct in office was based legally constitute a sufficient cause for removal of the Mayor from office?"

On August 17, 1967 the Court filed its decision in writing with findings of fact and rulings of law answering question No. 1 in the affirmative and question No. 2 in the negative. The correctness of these rulings is now before us together with a complete transcript of the hearings before the board of aldermen and the Merrimack County Superior Court.

The Concord city charter provides as follows: Laws 1957, 429:13.

"REMOVAL OF MAYOR, ALDERMEN. The board of aldermen may, on specific charges and after due notice and hearing, at any time remove from office the mayor or one of its own members for prolonged absence from or other inattention to duty, mental or physical incapacity, incompetency, crime, immorality, or misconduct in office upon affirmative vote on roll call of at least ten aldermen. A vacancy occasioned by removal under this section shall be filled in the manner provided in section 10 of this charter."

Counsel for J. Herbert Quinn charged that the hearing and removal were unfair in that certain of the aldermen were prejudiced and participants in a conspiracy to remove the mayor. Nine of the fourteen aldermen were examined by counsel for Quinn before the Superior Court and other witnesses were presented also to support this charge. The Trial Court found that no members of the board of aldermen were disqualified by reason of bias, prejudice, participation in a conspiracy, or pre-judgment of the charge from acting as members of the impeachment tribunal. The Court further found that the hearing was conducted fairly and that mayor Quinn was given every opportunity to defend himself against the charges brought against him. A review of the evidence supports these findings and rulings of the Trial Court and they are sustained.

The Legislature in this charter provided the tribunal and prescribed the standards for removal. It is clear from the evidence that these standards were followed; and that in the conduct of the hearing opportunity was fairly given to mayor Quinn to know the charges against him, to have his own counsel cross-examine witnesses and to present evidence on his behalf to refute the charges.

In the present case the charter prescribes a tribunal whose members in every case will be acquainted with the parties and have some knowledge of the facts. In this respect, it differs from

the ordinary approach of judge and jury. It has been generally held for example that aldermen are not disqualified from voting on charges because they served on a committee that formulated the charges. See 4 McQuillin, Municipal Corporations ( 3d *ed.* ) *s.* 12.259; 62 C.J.S., Municipal Corporations, 953. Findings which result from an unfair hearing or a prejudiced tribunal will not be sustained. However, it must be recognized that in this case the Legislature intended removal proceedings to be conducted by the aldermen who may bring the charge and some of whom may have substantial knowledge of the evidence to be presented, or may have had differences from time to time with the person whose removal is sought.

The Trial Court correctly held that certiorari may not be invoked to review findings of fact and that the Court was limited to an inquiry of law whether the finding or verdict could reasonably be made. *Carling Brewing Co.* v. *State Liquor Commission,* 102 N. H. 284; *Cloutier* v. *State Milk Control Board,* 92 N. H. 199, 203; *Opinion of the Justices,* 98 N. H. 533, 536; *Sinkevich* v. *Nashua,* 97 N. H. 262, 265. Unless the evidence shows that the conclusion could not have been reasonably reached, the action taken will be held valid. *LaBonte* v. *Berlin,* 85 N. H. 89.

There was evidence to warrant the following findings by the board of aldermen relating to the incident of June 28. Mayor Quinn went to the Brick Tower Motel at about six-thirty P. M. on the 28th and inquired as to whether one James Langley was in the lounge. The mayor may or may not have personally observed James Langley in the lounge. At 7:05 P.M. the mayor telephoned the Concord police department and spoke to captain Morey, the officer on duty. He identified himself by name and asked whether a sergeant was on duty. When informed that none was available he asked what older experienced officer was on duty. Captain Morey told the mayor that officer Mayo was in the north end and officer Ash in the south end. The mayor requested officer Mayo and was informed by the captain that he would send Mayo to Rollins Park, the place of meeting requested by the mayor, as soon as he was clear of a duty detail Mayo was then performing.

Captain Morey attempted to locate officer Mayo but had been unsuccessful when mayor Quinn called back at 7:33 P. M. At this time the mayor informed him that "this involves a DWI"

[driving while intoxicated], and captain Morey told the mayor he would send officer Ash right down. Officer Ash was then instructed to go to Rollins Park to meet an unnamed person that he would recognize.

Officer Ash arrived at Rollins Park where he met the mayor whom he recognized. The mayor informed him that he had a DWI for him and, when officer Ash inquired "Where?", told the officer to follow him. They drove in their respective cars to the Concord Coach, a motel adjacent to the Brick Tower Motel. The mayor then informed Ash that a man who had been drinking in the Brick Tower lounge all afternoon would be leaving the Brick Tower area driving a white Pontiac with license plate M-H, 965. The mayor instructed the officer to stop the car and take the driver to the station for a blood test and confine him. Officer Ash inquired as to the name of the driver and was informed that it was James Langley.

Mayor Quinn then informed officer Ash that he would go to the motel and see if Langley was still there. A short time later the mayor returned and informed officer Ash that Langley had left. In reply to a suggestion that there would be other days if the subject was in the habit of drinking at the Brick Tower the mayor stated "today was the day he was set up for this and it was over something that happened that day."

The mayor then instructed Ash not to tell captain Morey what had happened but to inform him that there had been a disturbance in Rollins Park by a party who was "on his way." Officer Ash returned to the station and reported to captain Morey both the mayor's requested report and the actual incident.

James Langley is the editor of the Concord Monitor, a local newspaper that has been highly critical of the mayor in its editorials.

The Trial Court found that the conduct of the mayor was not "such misconduct as would legally justify his removal." The Trial Court's ruling of misconduct is correct but it was error to rule that the mayor's misconduct could not reasonably be found by the aldermen to justify removal under the charter.

The city charter of Concord establishes a "strong mayor" type of government. Under this charter the mayor is the chief administrative officer charged with supervising the administrative affairs of the city. The mayor appoints the administrative officers of the city, including the police chief. The aldermen are

specifically enjoined from seeking individually to influence the official acts of the mayor. With this charter, any request of the mayor to an employee of the city government must be presumed to. be in his capacity as mayor. The Trial Court correctly ruled that the mayor acted as mayor on the night of June 28 in his relations with the police officers involved in the incident.

Misconduct has been variously defined by the courts.

"We think misconduct in office means simply the doing of something which the officer ought not to do, or the failure to do something which he ought to do, in the conduct of his office. Each case must rest upon its own facts." *Craig* v. *Jensen*, 66 S. D. 93, 100. Wording in individual charters differs widely and provides different procedures and tribunals for hearings. Because of this cases such as *State* v. *Zeigler*, 199 Iowa 392, relied upon by counsel for the mayor are distinguishable.

The Concord charter, unlike most, specifically sets forth a list of causes for which a mayor may be removed and misconduct must be construed with reference to this list. Among the causes listed are "incompetency, crime, immorality, or misconduct in office." *Ibid.* Clearly misconduct in office is something other than crime or immorality. and different from incompetency. The aldermen were justified in finding from the evidence that the mayor undertook to use the police force over which the charter grants him authority, to execute a personal vendetta against the editor of the local paper, and that upon the failure of the attempted arrest directed the officer to file a false report with his superior. While the first may be considered, as did the Trial Court, to have been a petty abuse of power, the second was misconduct in office as used in this charter. It could reasonably be found to have "constituted the doing of an act which ought not to be done, was without authority and tended to hinder, hamper and render ineffective law enforcement by duly constituted authority." *Matter of Sausbier* v. *Wheeler*, 276 N. Y. 246, 251.

The fact that another tribunal might find that the misconduct was not such as to justify removal does not permit a substitution of the judgment of others for that of the board of aldermen where the charter leaves this judgment to them.

The charter states that "The board of aldermen *may* . . . remove . . . for . . . misconduct in office." *Ibid.* Whether or not misconduct is "such misconduct" as to justify removal is therefore left to the aldermen and this court will not disturb their

finding that it was. *Sinkevich* v. *Nashua, supra.*

> *Petition for writ of supersedeas dismissed.*
> *Petition for writ of certiorari granted;*
> *order of the Superior Court set aside.*

All concurred.