Scott BRADLEY, Petitioner,

v.

The STATE of Texas on the Relation of Dale WHITE, Respondent.

No. 97–1135.

Supreme Court of Texas.

Argued Sept. 28, 1998.

Decided April 8, 1999.

Bob E. Shannon, Joe R. Greenhill, Scott K. Field, Austin, E. Eldridge Goins, Jr., James W. Morris, Jr., Jeffrey S. Wigder, Dallas, for Petitioner.

Ann Diamond, Tim Curry, Marshall M. Searcy, Jr., Dee J. Kelly, William N. Warren, Michael Schattman, Barbara P. Neely, Fort Worth, for Respondent.

Justice BAKER delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice ENOCH, Justice OWEN, Justice HANKINSON, Justice O'NEILL and Justice GONZALES join.

This is a quo warranto case. Scott Bradley asserts that the Board of Aldermen of the Town of Westlake, Texas did not lawfully remove him as Mayor under section 21.002(f) of the Texas Local Government Code because the removal proceedings violated Texas Rule of Civil Evidence 605.[1] We agree. Therefore, we reverse the court of appeals' judgment for the State and render judgment for Bradley.

## I. BACKGROUND

In May 1994, Scott Bradley was elected Mayor of Westlake, a general-law municipality. He was reelected in May 1996. On April 14, 1997, Howard Dudley, a Westlake alderman, filed a complaint against Bradley alleging official misconduct and incompetency. Specifically, Dudley alleged that Bradley (1) canceled a special town meeting called by alderman Carroll Huntress and removed the public notice of the meeting; (2) directed the

Town Secretary to exclude from the meeting agenda an item Huntress requested and to remove a part of the proposed minutes from another town meeting; and (3) caused the Town Engineer to prepare a false boundary map of Westlake, and then presented the falsified map to the Board of Aldermen as part of an ordinance.

On April 28, 1997, the Westlake Board of Aldermen sat as a court to hear the charges against Bradley and to decide whether there was sufficient cause for his removal from the Mayor's office. During the trial, Dudley and another alderman, Al Oien, testified against Bradley. Dudley testified that he had provided Bradley with a request for and notice of the meeting Bradley allegedly canceled. Oien testified that when the Board passed the ordinance at issue, no map was attached to it. At the end of the trial, four of the five aldermen, including Dudley and Oien, found Bradley guilty of the charges. On motion made by Oien and seconded by Dudley, the Board voted to remove Bradley as Mayor of Westlake. Days later, the aldermen appointed Dale White as Mayor. Bradley refused to recognize the aldermen's judgment on the grounds that the removal procedure violated applicable procedural rules, substantive state law, and his federal and state constitutional rights.

On May 20, 1997, the State of Texas, on relation of Dale White, filed a quo warranto action seeking a declaration that White, not Bradley, was the lawful Mayor. The State alleged that: (1) the aldermen had lawfully removed Bradley from the Mayor's office under Texas Local Government Code section 21.002(f); (2) the aldermen had lawfully appointed Dale White as Mayor; (3) White had taken the oath of office on May 2, 1997, and therefore, lawfully held office as Mayor; and (4) Bradley had unlawfully usurped and intruded into the Mayor's office since his lawful removal. The State filed a motion for summary

---

1. Because the removal trial was held April 28, 1997, the former Texas Rules of Civil Evidence apply. Former Texas Rule of Civil Evidence 605 is identical to current Texas Rule of Evidence 605. *See* TEX.R. EVID. 605.

judgment asserting as grounds the allegations in its quo warranto petition.

Bradley filed a cross-motion for summary judgment. In his summary judgment motion Bradley alleged the following affirmative defenses: (1) Texas Local Government Code section 21.002 violates the Texas Constitution's separation of powers doctrine; (2) section 21.002 is unconstitutionally vague; (3) Bradley's removal trial violated his federal and state procedural due process rights; (4) a section 21.002 removal trial is penal in nature, and Bradley was denied his state constitutional right to a jury trial; (5) the aldermen were disqualified under the Texas Constitution to sit as judges in the removal trial because they had a pecuniary interest in the outcome; (6) the removal trial violated Texas Rules of Civil Evidence 605, 607, and 611b, and Texas Rules of Civil Procedure 18b, 527, 528, 544, and 571; (7) the removal trial violated the Texas Open Meetings Act; (8) the evidence at trial did not support Bradley's removal; (9) the removal judgment became a nullity when a new board of aldermen granted Bradley's motion for new trial; and (10) the removal judgment became a nullity when Bradley filed an appeal bond with the new board of aldermen.

The trial court denied the State's motion for summary judgment and granted Bradley's motion for summary judgment without specifying upon which of Bradley's summary judgment grounds it based its judgment. The court of appeals held that the State had conclusively proved the elements of its quo warranto action. 956 S.W.2d at 745. The court of appeals also held that Bradley had not conclusively proved all essential elements of his defense in quo warranto as a matter of law nor had he defeated at least one element of the State's quo warranto claim. Accordingly, the court of appeals reversed the trial court's judgment and rendered summary judgment for the State.

## II. APPLICABLE LAW

### A. STANDARD OF REVIEW—CROSS MOTIONS FOR SUMMARY JUDGMENT

When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence and determine all questions presented. *See Commissioners Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997); *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). The reviewing court should render the judgment that the trial court should have rendered. *See Agan,* 940 S.W.2d at 81; *Members Mut. Ins. Co. v. Hermann Hosp.,* 664 S.W.2d 325, 328 (Tex.1984). If a party brings the case to this Court and we reverse the court of appeals, we should render the judgment that the court of appeals should have rendered. *See Agan,* 940 S.W.2d at 81; *Tobin v. Garcia,* 159 Tex. 58, 316 S.W.2d 396, 400–01 (1958). When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious. *See Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995). We do not consider constitutional challenges when we can dispose of a case on nonconstitutional grounds. *See Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 13 (Tex. 1994).

### B. REMOVAL PROCEDURES

The Texas Local Government Code governs a mayor's removal from office in a general-law municipality. *See* TEX. LOC. GOV'T CODE § 21.002. A mayor may be removed from office for official misconduct, intentional violation of a municipal ordinance, habitual drunkenness, incompetency, or a cause prescribed by a municipal ordinance. *See* TEX. LOC. GOV'T CODE § 21.002(c). When a complaint is made against the mayor, the complaint must be presented to an alderman of the municipality. *See* TEX. LOC. GOV'T CODE § 21.002(f).

The alderman shall then file the complaint, serve the mayor with a copy, set a date for trial of the case, and notify the mayor and the other aldermen to appear on that day. *See* Tex. Loc. Gov't Code § 21.002(f). A majority of the municipality's aldermen constitutes a court in the mayor's removal trial with one of the aldermen presiding over the trial. *See* Tex. Loc. Gov't Code § 21.002(f). If two-thirds of the members of the court who are present at the trial find the mayor guilty of the complaint's charges and find that the charges are sufficient cause for removal from office, the court's presiding officer shall enter a judgment removing the charged officer and declaring the office vacant. *See* Tex. Loc. Gov't Code § 21.002(h).

Section 21.002 removal proceedings are subject to the procedural rules governing the justice courts and to procedural rules governing district and county courts, to the extent these govern justice courts. *See* Tex. Loc. Gov't Code § 21.002(h); Tex.R. Civ. P. 523 ("All rules governing the district and county courts shall also govern the justice courts, insofar as they can.") In addition, the Texas Rules of Civil Evidence apply to section 21.002 trials. *See* Tex.R. Civ. Evid. 101(b) ("[E]xcept as otherwise provided by statute, these rules govern civil proceedings in all Texas courts other than small-claims courts.").

### C. Texas Rule of Civil Evidence 605

"The judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve this point." Tex.R. Civ. Evid. 605. Texas Rule of Civil Evidence 605 is identical to its federal counterpart. *See* Fed. R.Evid. 605. Not surprisingly, there are few reported federal or state cases involving Rule 605 violations. Most cases that do involve judges testifying at the trial over which they are presiding are decided on due process grounds. *See, e.g.,Brown v. Lynaugh,* 843 F.2d 849, 851 (5th Cir. 1988); *Tyler v. Swenson,* 427 F.2d 412, 415 (8th Cir.1970); *Terrell v. United States,* 6 F.2d 498, 499 (4th Cir.1925); *Haynes v. State of Missouri,* 937 S.W.2d 199, 202 (Mo.1996); *Wilson v. Oklahoma Horse Racing Comm'n,* 910 P.2d 1020, 1024 (Okla.1996). These cases hold that a judge testifying as a witness violates due process rights by creating a constitutionally intolerable appearance of partiality. *See Brown,* 843 F.2d at 851 ("[I]t is difficult to see how the neutral role of the court could be more compromised, or more blurred with the prosecutor's role, than when the judge serves as a witness for the state."); *Tyler,* 427 F.2d at 416 ("The danger ... of subjecting [the judge's] impartiality to doubt and of placing the [party against whom the judge testifies] at an unfair disadvantage ... is very obvious."); *see also In Re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955)(disapproving of the "spectacle" of a trial judge presenting testimony which he must consider in adjudicating guilt or innocence).

Rule 605 is similarly concerned with the appearance of partiality. *See Hensarling v. State,* 829 S.W.2d 168, 170 (Tex.Crim.App.1992)(referring to Texas Rule of Criminal Evidence 605, which is identical to Texas Rule of Civil Evidence 605 and noting that the Rule's purpose is to preserve the judge's posture of impartiality before the parties and the jury); Wright & Gold, Federal Practice and Procedure: Evidence § 6062 (1990)(referring to Federal Rule of Evidence 605).

Comments of the Federal Advisory Committee on Proposed Rules indicate that Federal Rule of Evidence 605 purports to protect the appearance of impartiality. The Committee describes Federal Rule of Evidence 605 as:

> a broad rule of incompetency, rather than [a rule of] incompetency only as to material matters, leaving the matter to the discretion of the judge, or recognizing no incompetency. The choice is the result of inability to evolve satisfactory answers to questions which arise when the judge abandons the bench for the witness stand. Who rules on objections?

Who compels him to answer? Can he rule impartially on the weight and admissibility of his own testimony? Can he be impeached or cross-examined effectively? Can he, in a jury trial, avoid conferring his seal of approval on one side in the eyes of the jury? Can he, in a bench trial, avoid an involvement destructive of impartiality?

FED.R.EVID. 605 advisory committee's note.

Indeed, one of the few federal cases to apply Rule 605 held that it was reversible error for a trial judge's law clerk to testify about facts favorable to the plaintiff because the danger that the jury would identify the law clerk with the trial judge was obvious. *See Kennedy v. Great Atl. & Pac. Tea Co.,* 551 F.2d 593, 598 (5 th Cir. 1977). The court held that the "potential for prejudice" was so great that it rendered inquiry into actual prejudice to the parties "fruitless." *See Kennedy,* 551 F.2d at 598.

■ Rule 605 does not only apply to members of the judiciary, but also to those performing judicial functions that conflict with a witness's role. *See Gary W. v. Louisiana Dept. of Health and Human Resources,* 861 F.2d 1366, 1368 (5 th Cir.) (applying Rule 605 to prohibit deposition of special master appointed to ensure compliance with protective order in family law case); *Central Platte Natural Resources Dist. v. State of Wyoming,* 245 Neb. 439, 513 N.W.2d 847, 864 (1994) (applying Rule 605 and holding that court properly excluded testimony of doctor who assisted in decision making process in administrative adjudication); *but see Williams v. State,* 11 Ark.App. 11, 665 S.W.2d 299 (1984) (permitting testimony from trial court's bailiff, called as a rebuttal witness to impeach a defense witness's credibility).

## III. ANALYSIS

■ Because the trial court did not specify upon which ground it rendered summary judgment for Bradley, we can render judgment for Bradley if one of Bradley's summary judgment grounds is

meritorious. *See Star–Telegram,* 915 S.W.2d at 473. We first consider Bradley's nonconstitutional summary judgment grounds. *See Moriel,* 879 S.W.2d at 13. One of Bradley's summary judgment grounds is that he was not lawfully removed from office as the State's quo warranto action alleges because Oien and Dudley testified against him while they sat in judgment over his removal trial, violating Texas Rule of Civil Evidence 605. The court of appeals responded to Bradley's Rule 605 argument by citing case law that holds that aldermen who assert a complaint against a mayor are not disqualified from judging the mayor's removal hearing. *See Riggins v. Richards,* 97 Tex. 229, 77 S.W. 946, 949 (1904). The court of appeals then noted that section 21.002 allows all citizens of general-law municipalities, including aldermen, to file a complaint against a mayor. *See* TEX. LOC. GOV'T CODE § 21.002(f). However, the court of appeals did not discuss the aldermens' dual roles as judges and *witnesses* against Bradley in the removal trial.

Although Oien and Dudley are not members of the judiciary, they assumed judicial roles in the removal trial, roles which conflicted with their roles as witnesses. Section 21.002 required the aldermen to sit as a "court" over the removal "trial." *See* TEX. LOC. GOV'T CODE § 21.002(f), (g), and (h). Oien and Dudley, along with their fellow aldermen, decided whether Bradley had committed the acts the complaint described and if so, whether these acts warranted removal.

Oien and Dudley testified against Bradley about the facts that served as the basis for the complaint and then adjudicated whether Bradley was guilty of the complaint's charges. Their testimony created the appearance of bias that Rule 605 seeks to prevent and such a potential for prejudice to Bradley that inquiry into actual prejudice is fruitless. *Accord Kennedy,* 551 F.2d at 598. Therefore, we need not and do not conduct a harm analysis.

The concurring opinion asserts that section 21.002 is void for vagueness because the statute does not specify which justice court and district court rules apply to removal trials. The concurrence concedes, however, that the language of section 21.002 and Texas Rule of Civil Procedure 523 indicate that Texas Rule of Civil Evidence 605 applies to removal trials. The concurrence suggests that, nevertheless, Rule 605 should not apply because aldermen may be the only people familiar with the facts that form the basis for the complaint against a mayor.

Here, however, there is no indication that Oien and Dudley's testimony was necessary to the removal proceedings. On the contrary, the record reveals that it was not. Bradley himself admitted the substance of the first complaint. He testified at the removal trial that he canceled the meeting Huntress had called and removed the posted public notice of the meeting.[2] Bradley's concession rendered Dudley's testimony—that he had provided Bradley with notice of and a request for the meeting—unnecessary. The aldermen voted that Bradley was guilty of canceling the meeting and removing notice of the meeting and that those actions alone were sufficient cause for removal. Accordingly, Oien's testimony, which dealt solely with the falsified-map charge, was not necessary to the removal proceedings either.

## IV. CONCLUSION

We conclude that Oien and Dudley, by testifying, violated Texas Rule of Civil Evidence 605. Therefore, the Board of Aldermen did not lawfully remove Bradley as Mayor. Because Bradley conclusively negated an element of the State's quo warranto action—that the aldermen had lawfully removed Bradley under section 21.002—the court of appeals improperly reversed the trial court's judgment for

Bradley. We do not need to consider any of Bradley's other summary judgment grounds. Accordingly, we reverse the court of appeals' judgment and render judgment for Bradley on the State's quo warranto action. We declare that Bradley was the lawful Mayor of the Town of Westlake when the State filed its quo warranto action.

Justice ABBOTT filed a concurring opinion.

Justice ABBOTT, concurring.

The Court holds that the Westlake Board of Aldermen violated Texas Rule of Civil Evidence 605 when board members who sat as judges in Bradley's removal court also testified as witnesses against him. In so doing, the Court sidesteps a more fundamental flaw in the removal: the statute governing removal proceedings is unconstitutionally vague and thus denies Bradley due process and due course of law. *See* U.S. CONST. amend. XIV, § 1; TEX. CONST. art. I, § 19. Because I would hold the statute used to remove Bradley is void for vagueness, I concur in the Court's judgment.

### I

The statute providing for removal of a mayor in a general-law municipality such as Westlake states that "a majority of the aldermen constitutes a court to try and determine the case against the mayor," and the removal proceeding "is subject to the rules governing a proceeding or trial in a justice court." TEX. LOC. GOV'T CODE § 21.002(g), (h). Bradley asserts that a removal proceeding is a civil proceeding, and civil justice court rules provide for, among other things, venue change,[1] empaneling of juries,[2] a right to appeal,[3] and

---

**2.** Bradley testified that he canceled the meeting and removed the notice because it was an illegally called meeting.

**1.** *See* TEX.R. CIV. P. 528.

**2.** *See* TEX.R. CIV. P. 544.

**3.** *See* TEX.R. CIV. P. 573.

a right to move for new trial.[4] Bradley further argues that Rules of Civil Procedure and Evidence apply through Texas Rule of Civil Procedure 523, which states that "[a]ll rules governing the district and county courts shall also govern the justice courts, insofar as they can be applied, except where otherwise specifically provided by law or these rules." TEX.R. CIV. P. 523. Bradley contends that these applicable rules provide for recusal of judges,[5] prohibit judges from testifying in cases in which they sit,[6] and allow the right to full cross-examination and impeachment of witnesses.[7]

The State responds that "to graft onto § 21.002 all of the rules of civil procedure would render the statute virtually meaningless" and "would lead to an absurd result." Following the State's logic, the court of appeals concluded that justice court rules should apply when they are "not in conflict with" the intended structure of removal proceedings. 956 S.W.2d 725, 738.

Both approaches are flawed. Bradley's contention founders upon the clear text of the statute. Although section 21.002(h) states that a removal proceeding is subject to the rules governing a justice court trial, several justice court rules directly contravene requirements of section 21.002. For example, Bradley requested a venue change and jury trial that justice court rules provide for, but both requests conflict with the statute's express statement that "[a] majority of the aldermen constitutes a court to try and determine the case against the mayor." TEX. LOC. GOV'T CODE § 21.002(g). This specific textual provision of the statute precludes Bradley's proposal to apply all justice court rules and all rules of civil procedure. See TEX. GOV'T CODE § 311.026 (codifying the common-law doctrine for statutes *in pari materia,*

which states that when an irreconcilable conflict occurs between a general and a special statutory provision, the special provision prevails as an exception to the general provision). As the State contends, application of all the justice court rules and rules of civil procedure would lead to an "absurd result."

The interpretation of the statute that the State urges suffers from its own flaws. The State's argument leaves it to the caprice of the aldermen—many of whom are untrained in the rules of procedure and evidence—to pick and choose which rules may apply to a removal proceeding, and to choose which rules may not apply because they are "in conflict with" the structure of removal proceedings. A mayor subject to these removal proceedings would not know exactly which rules apply until the aldermen make that decision—a decision that may not be made until the proceedings are already underway. In effect, the State asks the Court to swap the "absurd result" that follows from Bradley's contentions for the arbitrariness that follows from its own proposal.

The Court should not be constrained to choose the lesser of the evils presented by the parties. Instead, the statute's unavoidable incongruities and ambiguities lead me to conclude, as Bradley argues in the alternative, that it is unconstitutionally vague.

## II

Under the United States Constitution, "[i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). They "may trap the innocent

---

4. *See* TEX.R. CIV. P. 567.

5. *See* TEX.R. CIV. P. 18b.

6. *See* TEX.R. CIV. EVID. 605 (currently TEX.R. EVID. 605).

7. *See* TEX.R. CIV. EVID. 607 (currently TEX.R. EVID. 607); TEX.R. CIV. EVID. 611(b) (currently TEX.R. EVID. 611 (b)).

by not providing fair warning" and they "impermissibly delegate[ ] basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Id.* at 108–09, 92 S.Ct. 2294. In order to avoid these dangers, the Due Process Clause requires that laws be reasonably clear. As the Supreme Court explained, due process:

> ensures that state power will be exercised only on behalf of policies reflecting an authoritative choice among competing social values, reduces the danger of caprice and discrimination in the administration of the laws, enables individuals to conform their conduct to the requirements of law, and permits meaningful judicial review.

*Roberts v. United States Jaycees,* 468 U.S. 609, 629, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984).

Responding to these concerns, the United States Supreme Court and this Court have long applied the principle that statutory language may not be so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926), *quoted in Texas Antiquities Comm. v. Dallas County Community College Dist.,* 554 S.W.2d 924, 928 (Tex.1977) (plurality opinion).

Although the vagueness standard applies most frequently to penal statutes, a civil statute may also be so vague that it violates due process. *See A.B. Small Co. v. American Sugar Ref. Co.,* 267 U.S. 233, 239–40, 45 S.Ct. 295, 69 L.Ed. 589 (1925) (explaining that the rationale of previous vagueness cases is not limited only to criminal cases because "[i]t was not the criminal penalty that was held invalid, but the exaction of obedience to a rule or standard which was so vague and indefi-

nite as really to be no rule or standard at all"); *Jones v. City of Lubbock,* 727 F.2d 364, 373 (5th Cir.1984); *Texas Antiquities Comm.,* 554 S.W.2d at 927–28 (plurality decision striking down a civil statute as unconstitutionally vague). The degree of clarity that the vagueness standard requires, however, "varies according to the nature of the statute, and the need for fair notice or protection from unequal enforcement." *Jones,* 727 F.2d at 373; *see also Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) ("[Vagueness] standards should not, of course, be mechanically applied. The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment."); *Texas Antiquities Comm.,* 554 S.W.2d at 927 (plurality decision stating that "varying degrees of specific standards" have been required in testing vagueness and breadth of legislative delegations, "[d]epending upon the nature of the power, the agency, and the subject matter"). In the case of this statute, the Court should consider that few actors deserve more clarity than elected officials who can be removed from office at the hands of other competing elected officials.

### III

The statute at issue, which provides for removal of a mayor in a general-law municipality, is a civil statute. *See Meyer v. Tunks,* 360 S.W.2d 518, 520–21 (Tex.1962) (action to remove a county officer is civil in nature). Our vagueness review must therefore apply a more tolerant standard for civil statutes.[8]

The statute fails even under that deferential standard. In *Texas Antiquities Committee,* a plurality of the Court professed that "[t]here has been called to our

---

**8.** *See Chavez v. Housing Auth.,* 973 F.2d 1245, 1249 (5th Cir.1992) (A civil statute that does not implicate the First Amendment is sufficiently unclear to violate due process if it is

" 'so vague and indefinite as really to be no rule or standard at all' or if it is 'substantially incomprehensible' "); *Jones,* 727 F.2d at 373 (same).

attention no case in Texas or elsewhere in which ... powers ... are more vaguely expressed or less predictable than those permitted by the phrase in question." *Texas Antiquities Comm.* 554 S.W.2d at 927.[9] The exercise of powers under this statute is hardly more predictable. In the context of a proceeding to remove a mayor in which his fellow aldermen are directed to sit as a court, the phrase "subject to the rules governing a proceeding or trial in a justice court" may at first glance seem clear. When one is forced to apply the provision, however, the inherent ambiguities become inescapable. The confusion and potential disregard for Bradley's rights that his petition describes—as well as similar predicaments described by amici [10]—illustrate this lack of a comprehensible standard.

A significant number of civil rules for a justice court either conflict directly with the statute's scheme for removal proceedings,[11] or they provide no relevant guidance to a board of aldermen.[12] Whether other justice court rules apply has been and will continue to be a matter of guesswork for aldermen, mayors, and even reviewing courts, leaving a situation ripe for "resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned,* 408 U.S. at 109, 92 S.Ct. 2294. For example, does the successful party recover costs as provided by Civil Rule 559?[13] Can the removal "court" order a new trial, as provided by Civil Rules 567–

70?[14] If so, could a new trial be ordered by newly elected aldermen taking the place of the aldermen who presided over the original trial?

Texas Rule of Civil Procedure 523, which states that rules governing district and county courts shall also govern justice courts, creates an assortment of other conundrums. Do Evidence Rule 605, prohibiting a judge from testifying as a witness, and Texas Rule of Civil Procedure 18b, providing for recusal of interested judges, apply to aldermen sitting as removal judges? Evidently the Court believes that Civil Procedure Rule 605 applies, and both of these rules would seem to apply under the language of both the statute and Civil Procedure Rule 523. However, these rules stand opposed to the reality that the very aldermen who sit as a court to try the mayor may also be the ones who bring the charge, "may have substantial knowledge of the evidence to be presented," or may have had past differences with the mayor. *See Quinn v. City of Concord,* 108 N.H. 242, 233 A.2d 106, 108 (1967); *see also Rutter v. Burke,* 89 Vt. 14, 93 A. 842, 849 (1915) (holding that a mayor who acted as accuser, prosecutor, and witness was not disqualified from voting, because "the Constitution of the city council, its exclusive jurisdiction as a trier, and the diversity of duties imposed upon it, preclude the idea that impartiality can be made the test" of the right of a board member to sit in a proceeding); *State v. Common Council,* 72 Wis.2d 672, 242 N.W.2d 689, 698 (1976)

---

9. The vague phrase in *Texas Antiquities Committee* was "buildings ... and locations of historical ... interest." *Id.*

10. Amici Paul Skelton and Marian Hill describe their experiences with removal proceedings in Parker and Seven Points, Texas. Skelton argues that the court of appeals' construction of the removal statute violates separation of powers and due process guarantees. Hill argues that the removal statute in question is unconstitutionally vague.

11. *See* Tex.R. Civ. P. 527–32 (relating to motions to transfer and venue changes); Tex.R. Civ. P. 540, 542, 544–56 (relating to juries).

12. *See* Tex.R. Civ. P. 524 (justices to keep a civil docket); Tex.R. Civ. P. 533 (requisites for writ or process from justice courts); Tex.R. Civ. P. 543 (dismissal for plaintiff's failure to appear); Tex.R. Civ. P. 560 (judgment for specific articles of property); Tex.R. Civ. P. 561 (enforcing a judgment for property).

13. *See* Tex.R. Civ. P. 559.

14. *See* Tex.R. Civ. P. 567–70.

("[T]he mere fact that [a council member] had stated under oath ... that there were grounds to remove [the city clerk] did not disqualify him from subsequently sitting as an impartial adjudicator."); 4 McQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 12.259.20, at 595 (3rd ed. 1992) ("[I]n a proceeding to remove, members of the council are not disqualified because of the fact that they were members of a committee to investigate and afterwards preferred charges; the fact that they may have formed an opinion concerning the accused is regarded as immaterial."). Indeed, the aldermen may well be the only people familiar with the facts underlying the removal proceeding. *Cf. id.* § 12.259.25, at 598 ("Particularly, an objection for bias against ... a member of a hearing tribunal will not be sustained where to do so would destroy the only tribunal with power in the premises."). Rare would be the occasion when a mayor could be tried by truly disinterested, unbiased, and uninformed aldermen. Yet that is the fiction that the Court forces upon the parties.

Ignoring these probabilities and applying these rules sets the stage for future enigmas. For instance, the statute states that "a majority of the aldermen constitutes a court." Assuming, as the Court does, that Evidence Rule 605 or Civil Procedure Rule 18b apply, what occurs if at least half of the aldermen must be recused because of bias or the necessity that they testify? The statute provides no guidance—"no rule or standard at all." [15] Neither does the Court.

## IV

Admittedly, courts "will often strain to construe legislation so as to save it against constitutional attack." *Scales v. United States*, 367 U.S. 203, 211, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961). Nevertheless, even if the Court assumed the burden of repairing this paradoxical statute, the task would require such a revision of the Legislature's words that the Court would exceed the bounds of its proper role in our divided government. The "constructions" urged by the parties would require us either to ignore specific words of the statute or to write our own ad hoc exceptions into the statute. As one scholar has recognized, "there is a difference between adopting a saving construction and rewriting legislation altogether." TRIBE, AMERICAN CONSTITUTIONAL LAW § 12–30, at 1032 (2d ed., 1988). We are invited to do the latter, but I believe we should decline the invitation. *See West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 651, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943) ("It is, of course, beyond our power to rewrite the State's requirement....") (Frankfurter, J., dissenting); *United States v. Reese*, 92 U.S. 214, 221, 23 L.Ed. 563 (1875) ("To limit this statute in the manner now asked for would be to make a new law, not to enforce an old one. This is no part of our duty.").

Rewriting a statute rife with traps and uncertainties is the power and duty of the Legislature. As the controversy at hand evinces, the decisions of local governments affect the lives of their citizens as profoundly and concretely as those of any other level of government. Sometimes a mayor's conduct necessitates removal proceedings. Nevertheless, such proceedings can reverse a majority of the local citizens' judgment as to who is best to lead them. Consequently, our state government owes a duty not only to the mayor but to his colleagues and constituents to ensure that such proceedings are neither arbitrary nor unfair, and never unconstitutional. This vague and unwieldy statute fails to carry out the task. I urge the Legislature to mend it soon.

---

**15.** *See Chavez,* 973 F.2d at 1249; *Jones,* 727 F.2d at 373.