# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00602-CV

**Public Utility Commission of Texas; Chairman Rebecca Klein; Commissioners Brett A. Perlman and Julie Parsley; and AT&T Communications of Texas, L.P., Appellants**

**v.**

**Southwestern Bell Telephone Company and Southwestern Bell Communications Services, Inc., d/b/a Southwestern Bell Long Distance, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. GN100469, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

### O P I N I O N

This is an appeal from a final judgment granting appellees Southwestern Bell Telephone Company ("SWBT")[1] and Southwestern Bell Communications Services, Inc. d/b/a Southwestern Bell Long Distance ("SBCS") (collectively, the "SWB Companies") declaratory, injunctive and mandamus relief prohibiting the Public Utility Commission of Texas (the "Commission") and AT&T Communications of Texas, L.P. ("AT&T") from conducting or participating in certain hearings and taking certain administrative actions pursuant to a complaint

---

[1] Southwestern Bell Telephone Company has changed its name to Southwestern Bell Telephone, L.P., d/b/a SBC Texas. However, because all the proceedings and documents in this case refer to SWBT, we will continue to use SWBT for purposes of this opinion.

filed by AT&T against the SWB Companies. The Commission and AT&T appeal by three issues. We will affirm the judgment of the district court.

## PROCEDURAL HISTORY

This dispute arose when AT&T, a competitor of the SWB Companies, filed a complaint with the Commission alleging that SWBT, a local exchange carrier, and SBCS, a SWBT affiliate offering long-distance service in Texas, were engaging in anti-competitive and discriminatory conduct in violation of the Public Utility Regulatory Act. Tex. Util. Code Ann. §§ 11.001-64.158 (West 1998 & Supp. 2003) [hereinafter PURA]. AT&T's complaint alleged that SBCS is offering intrastate long distance telephone service at prices too low for AT&T to compete and claimed that the remedy was for the Commission to reduce the level of SWBT's switched-access rates. The Commission initiated a hearing to consider AT&T's complaint. SWBT sought declaratory, mandamus and injunctive relief against the Commission on the ground that the Commission was acting beyond its statutory authority in conducting a hearing on AT&T's complaint. SWBT contended that the level of its switched-access rates had been specifically authorized by the legislature in PURA sections 58.301 and 58.302 and that an electing company under chapter 58 is not subject to a complaint or hearing regarding the reasonableness of its rates under any circumstances. *See id.* §§ 58.025(a), .301, .302 (West 1998 & Supp. 2003). SBCS intervened in support of SWBT and AT&T intervened in opposition.

The district court denied SWBT's request for a temporary injunction, but this Court held that the Commission should be temporarily enjoined from conducting a hearing pending trial on the merits. *Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 72 S.W.3d 23 (Tex. App.—Austin

2

2001, pet. dism'd w.o.j.). No temporary injunction was issued on remand because the Commission's proceedings were abated pending a decision by the district court on the merits of SWBT's claims. In cross motions for summary judgment, AT&T sought denial of all of SWBT's claims; SWBT sought a declaratory judgment that the Commission was acting without authority, together with ancillary mandamus and permanent injunctive relief; and SBCS sought declaratory judgment that the Commission had no jurisdiction over it. The Commission supported AT&T. The district court granted summary judgment in favor of SWBT and SBCS. The Commission and AT&T appeal by three issues, claiming that (1) the Commission has jurisdiction to consider AT&T's allegations against SWBT because it was given an oversight role to ensure the development of a competitive telecommunications market in Texas when the legislature adopted chapters 58 and 60 of PURA; (2) the Commission has jurisdiction over SBCS under section 52.108; and (3) in exercising its oversight authority, the Commission may reduce switched-access rates if necessary to remedy anti-competitive or discriminatory conduct.

## THE CONTROVERSY

SWBT is a local-exchange company which provides telecommunications services in a specified "local access and transport area" ("LATA"). Because it is a local-exchange company, it may not provide long-distance service between a point within the area and a point outside the area. This long distance service is provided by AT&T and SBCS, who are competitors. SBCS is an affiliate of SWBT but is a separate legal entity, as required. *See* 47 U.S.C.A. §§ 271, 272 (West 2001). In order to connect an intrastate long-distance call to SWBT's local network, long-distance carriers such as AT&T and SBCS must pay SWBT a "switched-access charge."

3

AT&T complained to the Commission that SWBT and SBCS were engaging in anti-competitive and discriminatory conduct by virtue of their affiliation. Specifically, AT&T complained that the SWB Companies had set the prices of their long-distance telephone service at levels designed to force competitors out of the Texas market for intrastate long-distance telephone calls. AT&T claims that SWBT and SBCS engaged in intra-corporate cross-subsidization to facilitate a price squeeze that was anti-competitive, predatory, discriminatory, and unreasonably preferential.

According to AT&T, the SWB Companies could take the money made by collecting above-cost switched-access rates from AT&T and use it to subsidize the long-distance service offered by SBCS. This permitted SBCS to sell long-distance at a rate so low it would cause a stand-alone company to lose money, but in combination with the access charges would permit the SWB Companies as a whole to make money. AT&T requested that the Commission order SWBT to reduce the amount of its current switched-access charges to equal SWBT's costs for providing the service.

The Commission docketed AT&T's complaint and referred the matter to the State Office of Administrative Hearings ("SOAH") to conduct a contested-case proceeding. The Commission bifurcated the proceedings into two phases. The first phase was to determine if there had been a violation of PURA. If a violation were found, the Commission would determine an appropriate remedy in the second phase. The Commission's preliminary order specified the following five issues to be addressed in phase one:

(1) Are SWBT and [SBCS] engaging in intra-corporate cross-subsidization, which facilitates a price squeeze for interLATA and or intraLATA telecommunications services that is unreasonably preferential, prejudicial, and/or discriminatory as applied?

(2) Is [SBCS] engaging in predatory pricing in violation of PURA § 52.107?

(3) Has either SWBT or [SBCS] priced intrastate long distance services in an anti-competitive manner?

    (a) What are the costs incurred by [SBCS] to provide intrastate long- distance?

    (b) What is the long-run incremental cost to SWBT to provide intra-state switched access service?

(4) Has either SWBT or [SBCS] priced intrastate long distance services in a manner that has resulted in the subsidization of competitive services with revenue from monopoly services in violation of P.U.C. Subst. R. 26.226?

(5) Are SWBT and [SBCS] engaged in conduct regarding the pricing of intraLATA and interLATA telecommunications services or switched access rates that is in violation of the imputation requirements of PURA §§ 60.061, 60.063 and P.U.C. Subst. R. 26.274?

Both SWBT and SBCS filed motions to dismiss AT&T's complaint, which the Commission denied. SWBT then filed suit in district court seeking to enjoin the proceedings at SOAH. SBCS intervened in support of SWBT, and AT&T intervened in support of the Commission. After a hearing, the district court denied SWBT's request for temporary injunction, which this Court reversed. *See Southwestern Bell*, 72 S.W.3d at 29. On remand, the district court granted SWBT's and SBCS's motions for summary judgment, construed the provisions of PURA, and entered the following declaratory judgments as to SWBT:[2]

---

[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 1997)

(1) The commission is acting beyond its statutory authority in conducting a hearing related to the validity of SWBT's current switched-access rates . . . .

(2) Because SWBT is charging the switched-access rates set by the Legislature in PURA §§ 58.301 and 58.302, the Commission has no statutory authority or jurisdiction to review for any regulatory purpose the validity or amount of SWBT's current switched-access rates.

(3) Because SWBT is an electing company under Chapter 58 of PURA, a hearing on AT&T's complaint . . . is an unlawful inquiry regarding the reasonableness of SWBT's rates; overall revenues; return on invested capital; or net income that is prohibited under any circumstances by PURA § 58.025(a).

(4) Neither PURA § 58.025(b) nor any other provision of PURA allows the Commission to adjust SWBT's current switched-access rates set by the Legislature through the implementation and enforcement of competitive safeguards under Chapter 60 of PURA, or by determining that the legislatively authorized switched-access rates violate PURA § 60.001 in any respect, or by any other means.

Based on these declaratory rulings, the district court permanently enjoined the Commission's hearings regarding any matter related to the validity of SWBT's switched-access rates, including "allegations of intra-corporate cross-subsidization or a price squeeze or other allegations related to the implementation and enforcement of competitive safeguards under Chapter 60 of PURA." However, the permanent injunction explicitly does not prohibit a "hearing or determination on allegations of anti-competitive *conduct* and/or the implementation and enforcement of competitive safeguards under Chapter 60 of PURA involving matters other than the reasonableness of SWBT's rates . . . ." (Emphasis added.)

As to SBCS, the court held: (1) Pursuant to sections 52.002(b), 52.102(a), and 52.107(b), the Commission lacked statutory authority to authorize or direct a hearing or investigation of SBCS; (2) PURA section 52.107 does not constitute authority to conduct the proceeding in the

6

absence of a predatory pricing complaint by an interexchange carrier;[3] (3) PURA section 52.108 does not constitute authority to conduct the proceeding because, as to SBCS, the proceeding is an inquiry into competition in provisioning long-distance service and section 52.107 is the sole statutory authority the Commission has to consider such matters; and (4) PURA sections 60.062 and 60.063 and Commission substantive rules 26.226 and 26.274 are applicable only to incumbent local exchange companies and, therefore, do not apply to SBCS.

## DISCUSSION

### *Standard of Review*

When both sides move for summary judgment and the trial court grants one motion and denies the other, we will review both sides' summary judgment evidence and determine all questions presented. *Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex. 1999); *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). If there is error, we will render the judgment that the trial court should have rendered. *Bradley*, 990 S.W.2d at 247; *Agan*, 940 S.W.2d at 81.

The primary issues before this Court are (1) whether the Commission has the authority to consider AT&T's complaint against SWBT and SBCS, and (2) whether the Commission

---

[3] Before trial, AT&T amended its complaint to eliminate its section 52.107 predatory pricing allegations against SBCS; therefore, section 52.107 is no longer a basis for Commission jurisdiction over SBCS. *See* Tex. Util. Code Ann. § 52.107 (West 1998) [hereinafter PURA]. SBCS's motions for summary judgment claimed that the Commission lacked statutory authority to assert jurisdiction over SBCS because by eliminating its claims under section 52.107, AT&T removed any jurisdictional basis for retaining SBCS as a party. In response, the Commission asserted that PURA section 52.108(3) gave it authority to consider AT&T's complaint as to SBCS.

has authority to reduce SWBT's switched-access rates to remedy a violation under chapter 60 of PURA. Because these issues involve statutory construction, we begin by looking at the plain and common meaning of the statutes' words. *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1998); *Grammercy Ins. Co. v. Arcadia Fin. Ltd.*, 96 S.W.3d 320, 323 (Tex. App.—Austin 2001, pet. denied). If the disputed statute is clear and unambiguous, we give the words their common meaning. *Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex. 1983); *Grammercy*, 96 S.W.3d at 323. Our objective when we construe a statute is to determine and give effect to the legislature's intent. *Liberty Mut. Ins. Co.*, 966 S.W.2d at 484. When ascertaining legislative intent, we look to the statute as a whole, not to its isolated provisions. *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex. 1985); *Grammercy*, 96 S.W.3d at 323.

As a state administrative agency, the Commission only has those powers the legislature expressly confers on it. *Cities of Austin v. Southwestern Bell*, 92 S.W.3d 434, 441 (Tex. 2002); *Public Util. Comm'n v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 315 (Tex. 2001). The Commission may also have implied powers necessary to accomplish any express duties the legislature has given it. *Cities of Austin*, 92 S.W.3d at 441. However, the Commission may not exercise what is effectively a new power, or a power contrary to a statute, on the theory that the power is expedient for administrative purposes. *Id.* We will give weight to how the Commission interprets its own powers, but only if the interpretation is reasonable and consistent with the statute. *Id.* It is within the judicial power to say with final authority what a statute means. *Southwestern Bell*, 72 S.W.3d at 31.

8

*Statutory Provisions Relating to Switched-Access Rates*

In 1995, the legislature responded to the national trend toward deregulation and amended PURA by adding provisions for "incentive regulation." This gave telecommunications companies the option of becoming deregulated through a statutory transition process designed to enable an orderly transition from traditional rate-of-return regulation for local-exchange companies that elected to be governed by the new form of regulation—referred to as electing companies. PURA § 58.001(1) (West 1998). SWBT elected to be governed by the new incentive-regulation statutes. *See id.* §§ 58.001-.267 (West 1998 & Supp. 2003). In 1997, the legislature added to the incentive-regulation as follows:

> Section 58.025. Complaint of Hearing
>
> (a) An electing company is not, *under any circumstances*, subject to a complaint, hearing, or determination regarding the reasonableness of the company's:
>
> (1) rates; (2) overall revenues; (3) return on invested capital; or (4) net income.
>
> (b) This section does not prohibit a complaint, hearing, or determination on an electing company's implementation and enforcement of a competitive safeguard required by Chapter 60.

*Id.* § 58.025 (West 1998) (emphasis added).

In 1999, the legislature added further to the incentive-regulation provisions, including the following amendments:

> Section 58.301. Switched Access Rate Reduction

9

An electing company with greater than five million access lines in this state [which includes SWBT] shall reduce its switched access rates on a combined originating and terminating basis as follows:

(1) the electing company shall reduce switched access rates on a combined originating and terminating basis in effect on September 1, 1999, by one cent a minute; and

(2) the electing company shall reduce switched access rates on a combined originating and terminating basis by an additional two cents a minute on the earlier of:

(a) July 1, 2000; or

(b) the date the electing company, or its affiliate formed in compliance with 47 U.S.C. Section 272, as amended, actually begins providing interLATA services in this state in accordance with the authorization required by 47 U.S.C. Section 271, as amended.

Section 58.302. Switched Access Rate

(a) An electing company may not increase the per minute rates for switched-access service on a combined originating and terminating basis above the lesser of:

(1) the rates for switched access services charged by that electing company on September 1, 1999, as may be further reduced on implementation of the universal service fund under Chapter 56; or

(2) the applicable rate described by Section 58.301 as may be further reduced on the implementation of the universal service fund under Chapter 56.

(b) Notwithstanding Subchapter F, Chapter 60, but subject to Section 60.001, an electing company may, on its own initiative, decrease a rate charged for switched access service to any amount above the long run incremental cost of the service.

*Id.* §§ 58.301, .302 (West Supp. 2003).

After SWBT elected to be governed by incentive regulation, the amount of its fixed-access charges was suspended for a time at the pre-1995 amount, as provided in PURA sections

10

58.054 to 58.267. They were then reduced according to the one-cent and two-cent incremental reductions mandated by PURA sections 58.301 and 58.302, producing SWBT's current switched-access charges.

*The Statutory Dispute Involving SWBT*

In its first and third issues, the Commission argues that it has authority to consider AT&T's complaint against SWBT under chapters 58 and 60 of PURA, as well as the authority to reduce SWBT's switched-access rates to remedy a violation under chapter 60. It argues that when the legislature adopted chapters 58 and 60 it created a new role for the Commission—an oversight role—designed to ensure the development of a competitive marketplace. Specifically, the Commission points to PURA sections 60.001 and 60.002 as the centerpiece of their regulatory oversight scheme. Section 60.001 provides:

Section 60.001. Fair Competition.

To the extent necessary to ensure that competition in telecommunications is fair to each participant and to accelerate the improvement of telecommunications in this state, the commission shall ensure that the rates and rules of an incumbent local exchange company:

(1) are not unreasonably preferential, prejudicial, or discriminatory; and

(2) are applied equitably and consistently.

Section 60.002 provides:

Section 60.002. Exclusive Jurisdiction: Enforcement.

(a) The commission has exclusive jurisdiction to implement competitive safeguards.

11

  (b)  Section 58.025 does not prevent the commission from enforcing this chapter.

*Id.* §§ 60.001, .002 (West 1998).

   SWBT counters that the Commission's approach would effectively nullify incentive regulation under chapter 58 and allow rate regulation at the behest of competitors through the provisions of section 60.001. Further, SWBT contends that the Commission cannot conduct a hearing on AT&T's complaint because it lacks the authority to grant the principal relief sought by AT&T—a reduction in SWBT's switched-access rates.

   The current amount of SWBT's switched-access rates is the result of the company's unquestioned compliance with PURA sections 58.054,[4] 58.301, and 58.302. Although SWBT's rates are the result of compliance with the legislative mandates set out in PURA, the Commission contends that it has jurisdiction to hold a hearing questioning that amount for the purpose of reducing it further to cure SWBT's allegedly anti-competitive, discriminatory, prejudicial, or unreasonably preferential effects. SWBT argues that it has a statutory right to charge the current amount and enjoys statutory immunity from the Commission's inquiry or attempts to reduce that amount, citing PURA section 58.025(a).

   By adopting chapter 58, the legislature signaled a sea change in how telecommunications utilities that elect incentive regulation are to be governed. *Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 31 S.W.3d 631, 636 (Tex. App.—Austin 2000), *aff'd*, 92 S.W.3d

---

  [4] PURA section 58.054 deals with rate caps for electing companies.

434 (Tex. 2002). In contrast to the prior practice,[5] section 58.025 states that a company electing incentive regulation "is not, under any circumstances, subject to a complaint, hearing, or determination regarding the reasonableness of the company's: (1) rates . . . ." PURA § 58.025(a). Before the 1995 and 1999 amendments to PURA, regulation by the Commission was intended to act as a substitute for normal market competition. *Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 79 S.W.3d 226, 228 (Tex. App.—Austin 2002, no pet.). When the legislature enacted the amendments, it significantly changed the way electing companies are supervised. *Id.* (citing *Southwestern Bell*, 31 S.W.3d at 636). Electing companies are not subject to complaints, hearings, or determinations concerning their rates. *Id.* Market forces, not regulation by the Commission, now determine rates. *Id.* As this Court stated in an earlier opinion involving these parties, "[w]e are convinced that the overriding intent of the legislature in enacting the amendments to PURA was to permit an electing company great latitude in its operations and rates, except as proscribed by the amendments themselves." *Id.* at 229.

The crux of this dispute involves how to properly harmonize the statutory provisions at issue. SWBT argues that section 58.025(a), in conjunction with sections 58.301 and 58.302, prohibits any hearing inquiring into the reasonableness of switched-access rates. The Commission

---

[5] Before the 1995 "incentive regulation," the Commission fixed the amount of SWBT's switched-access charges under the rate-of-return regulation. The Commission purposely fixed the amount above SWBT's related costs to compensate for the costs SWBT incurred in providing basic telephone service to all its customers as required by the statutory and agency policy of "universal service." *Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 72 S.W.3d 23, 27 (Tex. App.—Austin 2001, pet. dism'd w.o.j.).

claims that this prohibition is tempered by section 58.025(b), in conjunction with sections 60.001 and 60.002, which together grant it the express authority to ensure that the rates and rules of an incumbent local exchange company, like SWBT, are not unreasonably preferential, prejudicial, or discriminatory.

In order to determine what powers the legislature conferred on the Commission, we first look to the pertinent statutes. *Cities of Austin*, 92 S.W.3d at 442. We begin with the words used but may also consider the object to be attained by the statutes, the circumstances surrounding the enactment of the statute, and the consequences of a particular construction. *Id.* We will generally accept the words used according to their ordinary meaning and will not give them an exaggerated, forced, or constrained meaning. *Id.* We will presume that the legislature used every word of a statute for a purpose. *Id.* Additionally, we will try to avoid construing a statutory provision in isolation from the rest of the statute; rather, we will look at the act as a whole and not just single phrases, clauses or sentences. *Id.*

Section 58.025(a) expressly forbids the Commission to entertain a complaint, conduct a hearing, or make any "determination regarding the reasonableness of the company's . . . rates." PURA § 58.025(a). Both AT&T and the Commission agree that what they are seeking is a reduction in SWBT's switched-access rates. However, the language in section 58.025(a) could not be more clear. It unequivocally states that a complaint, hearing, or determination on the reasonableness of an electing company's rates may not be conducted "under any circumstances." *Id.* We believe that when the legislature used the language "under any circumstances," it meant just that. There are no circumstances contemplated in which the Commission may inquire into SWBT's rates once it

14

became an electing company. By requiring that the hearing be conducted by an Administrative Law Judge supplied by SOAH and an attendant proposal for decision, the Commission clearly indicated its intention to conduct a contested-case hearing aimed at determining SWBT's legal rights with respect to the current amount of its switched-access charges. The Commission's attempt to hold a hearing to determine possible reductions in SWBT's switched-access rates is in clear violation of this statutory provision.

The Commission argues that section 58.025(b) specifically contemplates that an electing company can be subject to a complaint, hearing, or determination under chapter 60. Specifically, sections 60.001 and 60.002 grant the Commission authority to ensure that the rates and rules of an incumbent local exchange company are not unreasonably preferential, prejudicial, or discriminatory, and are applied equitably and consistently. The Commission claims that section 60.002 makes clear that section 58.025 does not prevent the Commission from exercising its oversight authority under chapter 60. We disagree.

In chapter 58, the legislature has determined the reduced level of switched-access rates. *See id.* §§ 58.301, .302. While the Commission can ensure that SWBT *applies* these rates consistently under section 60.001, nothing in the language of 60.001 gives the Commission the power to reduce the rates that the legislature has authorized, or to find them preferential, prejudicial, or discriminatory. By charging switched-access rates set by the legislature, SWBT cannot be acting in a prejudicial or discriminatory manner. It is simply doing what the legislature authorized it to do—charging switched-access rates at the reduced levels. To hold otherwise would allow the

15

Commission to dismantle the incentive plan the legislature set by reducing the switched-access rates SWBT is authorized to charge under sections 58.301 and 58.302.

We believe the legislature contemplated that section 60.001 would apply if an electing company voluntarily reduces its switched-access rates. As provided in section 58.302(b) ". . . subject to section 60.001, an electing company may, on its own initiative, decrease a rate charged for switched access service to any amount above the long run incremental cost of the service." *Id.* § 58.302(b). The reference to section 60.001 ensures that a decrease in switched-access rates initiated by SWBT is applied consistently and not in a discriminatory manner, consistent with the purpose of section 60.001. However, the legislature did not provide that its own specification of the level of reduced switched-access rates in section 58.301 was subject to section 60.001. The legislature made section 58.302 subject to section 60.001, but did not attach that same condition to section 58.301, refuting the Commission's arguments that the legislature intended the rates authorized by section 58.301 to be subject to its oversight authority in section 60.001.

Accepting the Commission's construction would lead to the absurd result that the Commission could rely on a "competitive safeguard" under chapter 60 to overturn switched-access rates authorized by the legislature in chapter 58. To interpret chapter 60 so broadly would, in effect, nullify section 58.025's promise that under no circumstances would electing companies be subject to a hearing regarding the reasonableness of their rates. In essence, it would grant the Commission the authority to trump the incentive regulation provisions of chapter 58, specifically the rates set by the legislature for switched-access services. Therefore, we hold that the Commission does not have the authority to consider AT&T's complaint against SWBT and overrule its first issue.

16

As part of the Commission's argument that it has the authority to remedy a violation, it argues in its third issue that because the legislature repealed PURA section 58.062,[6] this necessarily confers on the Commission the authority to review and adjust the rates of an incumbent local exchange company, including its switched-access rates, to ensure that competition is fair to each participant. This argument is without merit.

As we mentioned above, an administrative agency has only the powers conferred upon it in clear and unmistakable language. *Cities of Austin*, 92 S.W.3d at 441. An agency may not exercise what is effectively a new power or a power contradictory to the statute on the theory that such an exercise will be expedient for the agency's purposes. *Id.* Because Commission authority can only be conferred by clear and unmistakable language, the *repeal* of a statute, here section 58.062, does not confer authority, especially in light of our decision today rejecting the Commission's claim of authority under chapters 58 and 60. The Commission's third issue is overruled.

### The Statutory Dispute involving SBCS

In its second issue, the Commission claims it has authority to consider AT&T's complaint against SBCS under PURA section 52.108. *See* PURA § 52.108 (West Supp. 2003). In its final judgment, the district court concluded that section 52.108 does not give the Commission

---

[6] Section 58.062 prohibited the Commission from reducing an electing company's rates for switched-access services before the expiration of the cap on basic network services. Act of May 21, 1997, 75th Leg., R.S., ch. 166, 1997 Tex. Gen. Laws 868, *repealed by* Act of June 19, 1999, 76th Leg., C.S., ch. 1212, § 57(1), 1999 Tex. Gen. Laws 4241.

17

jurisdiction or authority to conduct proceedings against SBCS because "that proceeding inquires into competition in the provisioning of long distance services and section 52.107 is the sole statutory authority that the Commission has to investigate allegations of impairment of competition by an interexchange carrier in the long distance industry." *Id.* §§ 52.107, .108 (West 1998 & Supp. 2003).[7]

Section 52.108 of PURA provides, in relevant part:

Section 52.108.  Other Prohibited Practices

The commission may enter any order necessary to protect the public interest if the commission finds after notice and hearing that a telecommunications utility has:

(3)  engaged in a pattern of preferential or discriminatory activities prohibited by Section 53.003, 55.005, or 55.006.

*Id.* § 52.108(3).

The Commission argues that the district court ignored its authority to inquire whether SBCS has "engaged in a pattern of preferential or discriminatory activities prohibited by sections 53.003, 55.005, and 55.006," specifically, the preferential and discriminatory practices prohibited by section 53.003.  Section 53.003(b) and (c) provides:

(b)  A rate may not be unreasonably preferential, prejudicial, or discriminatory but must be sufficient, equitable, and consistent in application to each class of consumer.

(c)  A public utility may not:

---

[7] In its second amended complaint, AT&T withdrew its predatory pricing claim available under PURA section 52.107(a).

(1)  grant an unreasonable preference or advantage concerning rates to a person in a classification;

(2)  subject a person in a classification to an unreasonable prejudice or disadvantage concerning rates; or

(3)  establish or maintain an unreasonable difference concerning rates between localities or between classes of service.

*Id.* § 53.003(b), (c) (West 1998).

The Commission claims that because AT&T's allegation is that SBCS is offering long distance service only to those customers who also subscribe to local telephone service from SWBT, it raises a question of preferential or discriminatory activities that the Commission has authority to consider under section 52.108. Further, the Commission asserts that AT&T's complaint is not about competition but, instead, about the "preferential and discriminatory conduct" prohibited by section 52.108(3). We disagree.

The language of AT&T's complaint makes clear that the true nature of its complaint against SBCS is about competition. It does not want the Commission to deny Texas consumers the ability to realize lower rates for long distance, rather it wants the Commission to lower SWBT's switched-access rates in order for AT&T to compete with SBCS's prices for long distance.

Section 52.108(3), by its plain language, prohibits preferential and discriminatory activities that have to do with rate and service classifications for *consumers*. What section 52.108 does is protect customers of an interexchange telecommunications utility from being subjected to unreasonable discrimination or preferences concerning the establishment of different rates for different classes of customers. AT&T does not allege SBCS's prices are prejudicial or

19

discriminatory against customers and even recognizes that SBCS's prices benefit customers. While the Commission claims that AT&T's complaint is not about competition, the sole allegation it points to in support of this is AT&T's assertion in its complaint that SBCS has limited its offering of interLATA long-distance service to SWBT customers. However, AT&T acknowledges in its brief to this Court that this is no longer correct. What AT&T asserts is that SBCS's prices discriminate against and are preferential *as to AT&T*, not as to customers, because those prices impact AT&T's ability to compete. This is not the type of discrimination or preferential treatment addressed by sections 53.003, 55.005, or 55.006.

This is not to say AT&T does not have a remedy for its complaints. Section 52.107 provides in relevant part:

Section 52.107. Predatory Pricing

(a) The commission may enter an order necessary to protect the public interest if the commission finds by a preponderance of the evidence after notice and hearing that an interexchange telecommunications utility has:

(1)  engaged in predatory pricing; or

(2)  attempted to engage in predatory pricing.

(b) A hearing held by the commission under Subsection (a) must be *based on a complaint from another interexchange telecommunications utility*.

. . . .

PURA § 52.107 (emphasis added).

AT&T chose to withdraw its predatory pricing complaint, instead relying on PURA section 52.108. Because we agree with the district court that section 52.107 is the sole statutory

20

authority for the Commission to investigate allegations of impairment of competition by an interexchange carrier in the long-distance industry, we overrule issue two.

*AT&T's Complaint*

AT&T raises an additional issue not joined by the Commission. AT&T argues that the district court erred in granting injunctive relief because the permanent injunction grants relief in excess of that requested. First, AT&T argues that the excessive character of the injunction begins with the parties enjoined. AT&T claims that SWBT only sought injunctive relief against the Commission and the Commissioners, yet the order enjoins AT&T as well. AT&T argues that because it is not one of the "officers, agents, servants, employees, and attorneys" of the Commission, which are legally included in an injunction against the Commission pursuant to rule 683 of the Texas Rules of Civil Procedure, it cannot be an enjoined party. Tex. R. Civ. P. 683. AT&T misreads rule 683. The language of rule 683 specifically includes, in addition to those persons mentioned by AT&T, any *parties* to the action. AT&T is a party to this action and the district court properly named it in the injunction.

In addition, AT&T claims that the injunction exceeds SWBT's request to enjoin any Commission activity as to the "reasonableness" of SWBT's switched-access rates. The language of the injunction enjoins the Commission from any activity "regarding any matter related to the *validity* of SWBT's current switched-access rates." (Emphasis added.) AT&T argues by using "validity" rather than "reasonableness," the injunction is broader in scope than the relief requested. However, in reviewing the temporary injunction, this Court cautioned that an injunction should be drawn "with

21

such specificity so as to remedy only the particular harm complained of," stating: "By this, we mean the contested case may proceed in the PUC for purposes unrelated to the *validity* of SWBT's current switched-access charges." *Southwestern Bell*, 72 S.W.3d at 34-35 (emphasis added). The district court was obviously tracking the language employed in this Court's opinion. We used the term "validity" because it is appropriate under these facts.

Something is "valid" if it has "legal efficacy or force," or is "well-grounded or justifiable," "logically correct," or "appropriate to the end in view." Webster's Collegiate Dictionary, at 1304 (10th ed. 1993). When the legislature set the switched-access rates and SWBT became an electing company, the rates authorized under the legislative scheme are not only reasonable, but also valid. In crafting the permanent injunction, the district court was mindful of the need to draw it with specificity so as not to be overly broad. To accomplish this, it first tracked the language this Court used and then went further to explain to the parties what was not prohibited. The permanent injunction states:

> This injunction does not prohibit a hearing or determination on allegations of anti-competitive *conduct* and/or the implementation and enforcement of competitive safeguards under Chapter 60 of PURA involving matters other than the *reasonableness* of SWBT's rates . . . (Emphasis added.)

A permanent injunction must not be more comprehensive or restrictive than justified by the pleadings, the *evidence*, and the *usages of equity*. *Gonzales v. Zamora*, 791 S.W.2d 258, 267 (Tex. App.—Corpus Christi 1990, no writ) (citing *Morgan v. Morgan*, 657 S.W.2d 484, 494 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd)). While the permanent injunction does not track the

22

pleadings exactly, the injunction is narrow and specific, and we cannot say the district court abused its discretion in drafting the injunction. AT&T's third issue is overruled.

## CONCLUSION

Having overruled all the Commission's issues as well as AT&T's additional issue, we affirm the judgment of the district court.

_____

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: July 11, 2003

23